## COMMONWEALTH vs. GERALD AMIRAULT.

Middlesex. December 6, 1988. — March 6, 1989.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & LYNCH, JJ.

*Child Abuse. Rape. Indecent Assault and Battery. Evidence*, Identity, Other offense, Sexual conduct, Fresh complaint, Cross-examination, Videotape, Bias of juror. *Practice, Criminal*, Instructions to jury, Bill of particulars, Argument by prosecutor, Assistance of counsel, New trial. *Witness*, Child, Credibility. *Constitutional Law*, Confrontation of witnesses, Fair trial. *Jury and Jurors.*

At a criminal trial, evidence of the defendant's misbehavior offered on the issue of identification, was, with appropriate limiting instructions, properly admitted. [227-228]

At the trial of indictments for sexual abuse of children, testimony of a fresh complaint made by a child victim some eighteen months after the alleged assault, which occurred when the child was four years old, was properly admitted as reasonably prompt in the exceptional circumstances of the case, as well as spontaneous; and further, the judge properly submitted to the jury the question whether the complaint was fresh. [228-230]

A criminal defendant's motion for mistrial based on the alleged improper admission of certain testimony was correctly denied in circumstances where the judge subsequently excluded that testimony with instructions to the jury to disregard it as evidence. [230-232]

A criminal defendant's motion to dismiss certain indictments for variance between bills of particulars and the proof at trial was correctly denied where the bills of particulars provided the defendant reasonable notice of the nature and character of the crimes charged for the preparation of his defense. [233-234]

A criminal defendant who had an opportunity to cross-examine a witness at trial was not denied any right to confront the witness, secured by the Sixth Amendment to the United States Constitution, by the witness's lapses of memory and unresponsiveness to some questions on cross-examination. [234-235]

At the trial of indictments for sexual abuse of nine children, the judge was warranted in concluding that the children were able to relate, recall and recount their experiences independently and not as a product of interviews with law enforcement personnel and others. [235-236]

In the circumstances of a criminal trial the judge's jury instructions were sufficient to cure the prosecutor's improper reference in closing argument to the defendant's postarrest silence. [236-238]

At the trial of multiple indictments for sexual abuse of children the prosecutor's statements that went beyond reasonable inferences to be drawn from the evidence were not prejudicial, in the circumstances, where the judge gave immediate instructions, upon the defendant's objections, that the jury disregard those statements. [238-240]

At a criminal trial the judge's correct instructions to the jury overcame any prejudicial effect of the prosecutor's misstatement of the law in final argument. [240]

No error appeared at the trial of indictments for sexual abuse of children in the presentation to the jury of one child's testimony by means of a videotape recording made in the judge's chambers in the presence of the judge, the defendant and counsel, where there was ample evidence of a compelling need to do so and where the quality of the videotape was adequate. [240-243]

A criminal defendant's rights to a fair trial and effective assistance of counsel were not compromised by certain trial procedures undertaken to accommodate the special needs of child witnesses, which the judge explained to the jury to avoid prejudice to the defendant. [243-244]

A criminal defendant's renewed motion for a new trial based on juror misconduct was properly denied where the new information submitted in support of the motion did not establish that a certain juror deliberately concealed relevant information from the court or the parties or that the juror was biased. [244]

INDICTMENTS found and returned in the Superior Court Department on January 21, 1985, and September 19, 1985.

The cases were tried before *Elizabeth J. Dolan*, J., and a renewed motion for a new trial was considered by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Juliane Balliro* for the defendant.

*Karen J. Kepler*, Special Assistant District Attorney (*Margot Botsford*, Assistant District Attorney, with her) for the Commonwealth.

HENNESSEY, C.J. The defendant was indicted for seven counts of indecent assault and battery on a child under the age of fourteen, and for eight counts of rape of a child under the age of sixteen. The fifteen indictments involve nine child vic-

tims, both female and male, aged four to eight years. A jury found the defendant guilty on all fifteen counts.

The defendant was sentenced to serve concurrent terms of from thirty to forty years at the Massachusetts Correctional Institution, Cedar Junction, on each of the eight indictments charging rape, and to concurrent terms of from eight to ten years on each of the seven indictments charging indecent assault and battery.

A single justice of the Appeals Court affirmed the denial of the defendant's motion to stay the execution of his sentence pending appeal, and ordered an expedited appeal of the denial of the defendant's motion for a new trial on the single issue that a juror in the case was biased. This court upheld the Superior Court judge's denial of the defendant's motion for a new trial on this issue. 399 Mass. 617 (1987).

The defendant later renewed his motion for a new trial based on additional evidence regarding his allegation of juror misconduct. The Superior Court judge denied the renewed motion.

The defendant now appeals from his convictions and from the denial of his renewed motion for a new trial. This court transferred the case here on its own motion. By reason of the foresight and skill of the trial judge, there was no reversible error. We affirm.

The Commonwealth filed a motion to remand the case to the Superior Court judge for further findings concerning the videotaped testimony of one of the child witnesses. A single justice of this court denied that motion.

The defendant was convicted for the multiple sexual assaults of children who attended the Fells Acres Day School (Fells Acres) in Malden. The defendant, known as "Tooky," is the son of the school's owner and director, Violet Amirault, known as "Miss Vi." The defendant worked at the school as a bus driver, helped prepare lunches and snacks, and performed maintenance tasks on the premises. The defendant's sister, Cheryl Amirault LeFave, known as "Miss Cheryl," worked at Fells Acres as a teacher for the toddlers' class. Fells Acres was in operation from 1982, until September, 1984, when the school was closed.

Classrooms at Fells Acres had as many as thirty children under the supervision of one teacher. In warm months, most teachers took their classes on field trips. Field trips included excursions to the schoolyard, to parks, to Miss Vi's pool, and other recreational areas. All the classes, except the toddlers' class, were often out of the building at the same time. During field trips, children sometimes remained at the school with Miss Cheryl, Miss Vi, or Tooky, due to ill health, bad behavior, late arrival, or early departure. Four of the children who testified in this case were occasionally left behind on field trips.

There was a regular nap time at Fells Acres after lunch, between 12:30 P.M. and 2:30 P.M. The children slept on cots set up in the classrooms. Because of overcrowding, children were often removed from their classroom and sent to another less crowded room during nap time. Generally, those children were called away by Miss Vi or Miss Cheryl.

Early in September, 1984, after Fells Acres was closed, a Fells Acres parents' meeting was held at the Malden police station. Parents of five of the children who testified in this case attended that meeting. The meeting alerted parents to the symptoms of sexual abuse, and directed parents to question their children about sexual abuse at Fells Acres.

The children's descriptions of the sexual abuse varied in some details but were similar over-all. Each of the children stated that he or she was forced to touch the defendant's penis, to lick food from his penis, or that the defendant touched or put his penis in the child's vagina or rectum. Some of the boys stated that the defendant had touched or kissed their penises. Some children testified that Tooky inserted various objects into their vaginas or rectums — a magic purple wand, a thermometer, a pencil, a stick, a knife, and a fork.

Some of the children described the abuse as being perpetrated by a bad clown. The bad clown made the children taste ice cream from his penis and made them touch his penis. One child described the incidents in terms of playing an elephant game at school, licking ice cream from the trunk of a pink elephant. The children related that the incidents occurred in a

magic or secret room. The magic room was described to be the bathroom on the second floor of the school.

Some children described seeing, or being photographed by a big camera with wires, a red button, and pictures that came out of the camera. One child, while at home, emerged naked from a closet, struck various poses and stated that this was what she had to do at school.

The children stated that they were threatened by Tooky or Miss Vi that if they told anyone about the incidents, that their parents, or family, would be killed, or cut up in pieces, or that the children would be sent away. One child described the killing of a bird, squirrel, and dog in his presence. Another child said her wrist was cut and that blood came out. Some of the children described a robot that threatened them, and told them not to tell their parents. Another child described being blindfolded during the incidents.

The parents of the child witnesses testified about their children's behavior while, or shortly after, attending Fells Acres. The children complained and cried about the school; they complained of stomachaches, headaches, pain in their genital areas, and bowel problems. They began bedwetting, lost their appetites, had nightmares, used baby talk, became fearful of lights, of men, and of being left alone. The children also displayed sexually explicit behavior; some began masturbating. Two of the boys tried to stick their tongues into their mothers' mouths, and one tried to kiss his mother's chest.

The defendant testified at his trial and denied committing any acts of sexual abuse on any of the children. Twenty-two teachers and teachers' aides, full and part-time employees of Fells Acres, testified on behalf of the defendant. Teachers testified that they never saw the defendant dressed as a clown, never saw a robot at the school, never heard of the magic or secret rooms. They testified that they were never restricted or denied access to any rooms in the school, that they never lost track of the children in their care for any length of time, never saw anything indicative of sexual abuse, and that the defendant was well-liked by the children.

Dr. Renee Brant, a child psychiatrist, testified that sexually abused children often delay making disclosure about the abuse, or make gradual disclosure, and frequently retract their disclosures. A child might not disclose the abuse due to fear, guilt, lack of trust, threats of harm to the child or the child's family, or loyalty to the abuser. Dr. Brant also described behavior sexually abused children frequently display, both trauma specific and trauma nonspecific. Trauma specific behaviors include sexualized behavior such as striking sexual poses, exposing genital areas, inserting objects into body cavities, and displaying age-inappropriate sexual knowledge. Trauma nonspecific complaints include stomachaches, sleep disturbances, aggressive behavior, and regression in the form of baby talk and loss of toilet training skills.

Dr. Jean Emans, a pediatric gynecologist, examined five of the female victims who testified in this case and made positive findings as to four of them. One child had a small hymenal bump (caused by rubbing, touching, irritation, or masturbation). Two suffered vulvitis (caused by irritation such as rubbing, nylon tights, leotards, irritating soaps, or sexual abuse). One child had a hymenal scar (extraordinarily rare in nonabused children) and a healed anal fissure; another suffered a labial adhesion (caused by rubbing, irritation, or sexual abuse).

Dr. Daniel Schuman, a psychiatrist, testified that sexualized behavior is not trauma specific to sexual abuse and can be a memory of something the child has seen or been exposed to, or the result of a severe emotional disturbance. He also testified about his "positive reinforcement loop" theory to explain false accusations of sexual abuse. He explained that children may reassure a parent's fearful expectations to maintain an emotional bond, resulting in reports of abuse that become increasingly magnified or exaggerated.

On appeal, the defendant challenges: (1) the admission of testimony concerning a clown; (2) the admission of fresh complaint testimony; (3) the denial of his motion for a mistrial based on improper admission of evidence pertaining to use of a camera and an expert witness's testimony on hymenal scarring; (4) the denial of his motion to dismiss based on variances

between the bill of particulars and the substitute bill of particulars, and the evidence presented at trial; (5) the denial of his motion to dismiss two indictments because of inadequate cross-examination of a child witness; (6) the denial of his motion to dismiss because of improper interviewing of the children; (7) the prosecutor's closing argument; (8) the presentation of a child's testimony by videotape; (9) the denial of his right to a fair trial because of the procedure used by the judge in the examination of the child witnesses; and (10) the denial of his renewed motion for a new trial on the grounds of juror misconduct.

1. *The Admission of Testimony Concerning a Clown.*

Five children, over defense counsel's objection, testified about a clown and the clown's actions during the sexual assaults. The children testified about a bad clown or a red clown at the school who hurt them, or made them touch his penis. The defendant moved for a mistrial, and alternatively moved to strike the testimony regarding the clown. The judge denied the motion. On appeal, the defendant argues that the evidence regarding a clown was improperly admitted as evidence of a common scheme.

The judge, however, allowed the jury to consider the testimony pertaining to a clown solely on the issue of identification in one of the indictments and so instructed the jury: "Testimony was produced at trial that the defendant dressed as a clown at the school and engaged in conduct alleged in one indictment while dressed as a clown. There was other testimony that an unnamed clown committed acts alleged in another indictment.

"If you find that the Commonwealth has proved that the defendant dressed as a clown or that while dressed as a clown committed the acts alleged in one indictment and you find that this conduct has sufficiently similar characteristics to the conduct on the unnamed clown, you may, but you need not, infer that the defendant was the unnamed clown; however, you are cautioned that this evidence of similar conduct is to be considered by you only on the issue of identity of the unnamed clown and it may not be considered by you for any other purpose."

Evidence that a defendant previously had misbehaved, indictably or not, is relevant as it relates to the subsidiary issue of identity and is not offered to prove his guilt but rather to prove the relevant subsidiary issue. *Commonwealth* v. *Triplett*, 398 Mass. 561, 562-563 (1986). See *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986) (evidence that defendant committed crimes unrelated to offense is competent where evidence tends to show identity); *Commonwealth* v. *Lacy*, 371 Mass. 363, 366 (1976) (defendant's prior acts relevant to the question of assailant's identity). The judge properly admitted the evidence, and explained its narrow and limited use to the jury.

2. *The Admission of Fresh Complaint Testimony.*

The judge permitted witnesses to testify concerning the fresh complaint of seven of the nine child witnesses in this case. The defendant objects to the fresh complaint testimony from the mother of one of the children. The child's mother testified that approximately eighteen months after her daughter last attended Fells Acres, her daughter stated that a clown put a pencil, a thermometer, and his "pee-pee" in her "bum-bum" and in her "pee-pee." The defendant argues that the fresh complaint was neither prompt nor spontaneous and therefore should have been excluded. We disagree.

There is no absolute rule of law as to the time within which a sexual assault victim must make her first complaint for that complaint to be admissible in evidence as a fresh complaint. *Commonwealth* v. *Comtois*, 399 Mass. 668, 673 (1987), citing *Commonwealth* v. *Bedard*, 6 Mass. App. Ct. 959, 959 (1978). "The determination whether statements are sufficiently prompt to constitute fresh complaints rests within the sound discretion of the trial judge. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 691 (1982). The test is whether the victim's actions were reasonable in the particular circumstances of the case. *Id. Commonwealth* v. *King*, 387 Mass. 464, 473 (1982). *Commonwealth* v. *McGrath*, 364 Mass. 243, 247 (1973)." (Footnote omitted.) *Commonwealth* v. *Comtois, supra* at 673. See *Commonwealth* v. *McDonough*, 400 Mass. 639, 652-653 (1987).

Courts have not insisted on great promptness for fresh complaints in prosecutions involving child sexual abuse. *Commonwealth* v. *Comtois*, *supra* at 672-673 n.9 (complaint of fourteen year old victim, approximately nine months after the last incident of abuse, held admissible as fresh complaint). See *Commonwealth* v. *Densten*, 23 Mass. App. Ct. 981, 981-982 (1987) (statements of nine year old special needs boy made seventeen days after incident held admissible as fresh complaint); *Commonwealth* v. *Adams*, 23 Mass. App. Ct. 534, 535-536 (1987) (statements of nine year old victim to police, made four months after first report of sexual assault held admissible as fresh complaint). Because child sexual abusers are often related to or friends of the child victim, and because the victim's silence has been induced by threats or coercion, courts are flexible in applying the usual fresh complaint strictures. *Commonwealth* v. *Comtois*, *supra* at 673, citing *Commonwealth* v. *Brenner*, 18 Mass. App. Ct. 930, 931-932 (1984). The cases involving child sexual abuse constitute a factually distinct branch of the fresh complaint doctrine that gives special consideration to the natural fear, ignorance, and susceptibility to intimidation that is unique to a young child's make-up. See *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 626 n.6 (1987). Cf. G. L. c. 277, § 63 (running of statute of limitation for child rape begins when victim reaches sixteen years of age or assault is reported to authorities, whichever occurs earlier).

In this case, the victim was approximately four years old when she was sexually abused. See *Commonwealth* v. *Comtois*, *supra* at 674, citing *Commonwealth* v. *Howard*, 355 Mass. 526, 530 (1969). The defendant threatened the victim, telling her that he would kill all of her family if she told anyone. See *Commonwealth* v. *Comtois*, *supra* at 675 (where defendant had warned daughter that she would get in trouble if she told anyone, victim made initial disclosure two months later). The child's complaint was reasonably delayed, given the exceptional circumstances of this case.

The defendant also objects to the admission of the fresh complaint testimony on the ground that the child's statements result from a suggestive and coercive interview. Although the

child made her statements following an investigatory interview, she did not respond to any of the interviewer's questions. In fact, the child made her complaint after the interview had ended. In the automobile on the way home from the interview with her parents, the child started to cry and said that she was afraid that they would all be killed. When asked why by her mother, the child made her initial disclosure of the abuse. It may be that a fresh complaint of child sexual abuse is not possible until the child victim recognizes the nature of the assault and is able to relate the incident. See *Commonwealth* v. *White*, 24 Mass. App. Ct. 936, 937 (1987) (statement by nine year old child, during digital examination of vagina by physician, that examination felt like what her father had done to her held admissible as fresh complaint); *People* v. *Clark*, 193 Cal. App. 3d 178, 182 (1987) (five year old child's complaint made after she attended class on molestation and learned the importance of reporting such incidents).

Furthermore, the judge submitted to the jury the question whether the complaint was "fresh." The judge instructed the jury that they should evaluate the weight of fresh complaint testimony by assessing the spontaneity, promptness, and voluntariness of the child's statements. The judge stated: "If, upon weighing these factors, you the jury determine that the evidence you heard from witnesses . . . was not fresh complaint of rape or indecent assault and battery, then you must disregard that fresh complaint corroboration." The judge's instructions were proper. See *Commonwealth* v. *Densten*, 23 Mass. App. Ct. 981, 982 (1987) (judge gave limiting instructions to the jury that it was for the jury to decide whether fresh complaint evidence should be accepted).

We reject the defendant's arguments that the child's statements were neither spontaneous nor prompt. In light of the circumstances of this case, it was within the judge's discretion to admit the corroborative testimony of the victim's mother.

3. *The Denial of the Defendant's Motion for a Mistrial on the Grounds of Improper Evidence of a Camera and an Expert Witness's Opinion Testimony on Hymenal Scarring.*

At trial, six children testified about the presence of a camera in the secret room, in the magic room, or in another house.

The children described the camera as having wires and a red button. Two girls testified that pictures came out of the camera. Some of the children testified that the defendant photographed them naked or partially naked; other children testified that Miss Cheryl or another person had taken pictures. Defense counsel objected to the admission of this testimony. At the close of the Commonwealth's case, the defendant moved for a mistrial, and alternatively moved to strike all evidence relating to the photographing of children and a camera. The judge denied the motion.

Dr. Emans, a pediatric gynecologist, testified with reference to one of the child witnesses, that she had observed a small hymenal scar. The child witness had testified that the defendant had inserted a knife into her anus. Dr. Emans was permitted to testify that based on the proximity of the hymen to the anus, which she estimated as one-half inch, an object inserted into the child's anus could scar the hymen without penetrating her vagina.[1] The defendant moved for a mistrial, and in the alternative moved to strike the testimony. The judge denied the motion.

Assuming, as the defendant argues, that the evidence regarding a camera, and the opinion testimony of Dr. Emans, was inadmissible at trial,[2] the judge's subsequent exclusion of the evidence and curative instructions were adequate. The judge

---

[1] The doctor testified: "My opinion is that because of the proximity between the anus and the vagina, that an object being inserted in that area could touch the hymen on the way to trying to find the anus."

[2] We assume, without deciding, that the evidence was inadmissible. There is, however, support for admitting the evidence regarding a camera as well as Dr. Emans's testimony. The testimony of six children concerning a camera may have been relevant to prove a common plan or scheme by establishing a particular way in which the abuse occurred. See *Commonwealth* v. *Davis*, 376 Mass. 777, 788 (1978). Dr. Emans's testimony may have been admissible if the judge determined that it was accompanied by a proper foundation, that it would be of assistance to the jury, and that it was not based on conjecture. *Commonwealth* v. *Francis*, 390 Mass. 89, 98 (1983). See *Commonwealth* v. *Pikul*, 400 Mass. 550, 554 (1987) (physicians allowed to testify that the bruises on child victim's ears were consistent with the pinching of both her ears with extreme force and were suggestive of forced oral sex).

instructed the jury regarding the testimony on a camera and photography: "[S]ome of the nine children who testified made references to the presence of cameras, having had their pictures taken, or other photographic devices. Testimony you have heard from these children relative to cameras, photographic devices, or photographs, is stricken; and you may not consider evidence relating to same against the defendant . . . . So if you have made any particular notes relative to photographs, photographic devices, or cameras, please note that you have been instructed now by the Court that the same is stricken and shall not be considered as evidence in this case." The judge repeated this instruction in the final jury instructions. With reference to Dr. Emans's. testimony on the hymenal scarring of one child, the judge instructed the jury: "Regarding the testimony of . . . Dr. Emans . . . . In respect only to one of the children . . . and concerning an opinion rendered as to that child, wherein Dr. Emans gave an opinion as to whether hymenal scarring observed . . . was consistent with the insertion of an object into the anal area of that child, that opinion or conclusion is stricken and may not be considered by you as evidence in this case. . . . And if you had so made a note of that, please indicate now in your notes that the same is stricken." The judge stated further, in her final instructions to the jury: "When evidence has been stricken, it has been stricken for all purposes . . . . Despite the fact that you may recall the testimony or portions of it, you must follow the instructions to disregard it and you cannot use it directly or indirectly by drawing inferences from same against the defendant."

The decision to deny a mistrial lies within the sound discretion of the judge. See *Commonwealth* v. *Cuneen*, 389 Mass. 216, 223 (1983); *Commonwealth* v. *Simmonds*, 386 Mass. 234, 241 (1982). Here, the judge correctly relied on curative instructions as an adequate means to correct any error and to remedy any prejudice to the defendant. *Commonwealth* v. *Helfant*, 398 Mass. 214, 228-229 (1986) (court presumes jury followed judge's instructions). *Commonwealth* v. *Jackson*, 384 Mass. 572, 579 (1981) (same).

4. *The Denial of the Defendant's Motion to Dismiss Based on Variances Between the Bill of Particulars and the Substitute Bill of Particulars, and the Evidence Presented at Trial.*

Prior to trial, the judge granted portions of the defendant's motion for a bill of particulars. The Commonwealth filed its original bill of particulars, which pertained to indictments alleging offenses perpetrated against nineteen victims. During trial, the Commonwealth filed an amended bill of particulars focusing primarily on the indictments pertaining to the nine children who actually testified. The defendant moved for further particulars, objecting to the substitute bill's use of the phrase "and/or" and use of the word "object" rather than a more specific term for certain rape indictments. The defendant also moved to dismiss some of the indictments.[3] The judge denied the motion. We conclude that there was no error.

"A defendant in a criminal proceeding is not entitled by a motion for a bill of particulars to secure a résumé of the evidence that the Commonwealth intends to introduce at the trial, or to have such motion treated in all respects as if it were a set of interrogatories." *Commonwealth* v. *Hayes*, 311 Mass. 21, 25 (1942). A bill of particulars should give a defendant reasonable notice of the nature and character of the crimes charged. *Id.* at 24-25.[4] Here, the Commonwealth's bill of particulars provided the defendant with such notice. The defendant had reasonable knowledge of the crimes charged, with adequate

---

[3] Defense counsel stated: "[M]y primary concern is that this type of language seems to me to suggest that the Government is prepared to argue things alternatively with respect to the facts of the allegations. I mean, how can it be that at this stage of the trial there's an 'and/or'. We heard what these children had to testify to. It's not optional any longer, and I don't believe the Government [should] be at its liberty to argue it optionally, and I would like, again, what minimal assurances Bills of Particulars are supposed to represent . . . knowing that the Government is, in fact, limited to that evidence that has been produced in connection with this case and that they are now not going to argue things alternatively."

[4] Rule 13 (b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 871 (1979), states that a defendant may request a "statement of such particulars as may be necessary to give both the defendant and the court reasonable notice of the crime charged, including time, place, manner, or means."

notice to prepare his defense. See *Commonwealth* v. *Tavares*, 385 Mass. 140, 157, cert. denied, 457 U.S. 1137 (1982) (defendant charged with murder in the first degree was not prejudiced by variance between bill of particulars, which suggested proof of premeditation and felony-murder but not extreme atrocity or cruelty, and proof at trial of extreme atrocity or cruelty, because victim's autopsy report put defendant on notice). The defendant here was not surprised by the proof offered by the Commonwealth at trial. *Id.*

5. *The Denial of the Defendant's Motion to Dismiss Two Indictments Because of Inadequate Cross-examination of a Child Witness.*

After one of the child witnesses testified, the defendant moved to dismiss two indictments alleging rape and indecent assault and battery of the child, arguing that inadequate cross-examination of the child violated his rights to confrontation secured by the Sixth Amendment to the United States Constitution. The record reveals that the child stated that she did not remember in response to some of defense counsel's questions on cross-examination. Defense counsel stated: "My problem is I still didn't get an opportunity to cross-examine the witness. We got the little girl . . . not remembering things that she testified to here in the courtroom today. . . . I haven't had a chance to cross-examine her. She ˙doesn't remember." We reject the defendant's argument and find no error.

The child's lapse of memory here is not comparable to a refusal to answer questions. See *Commonwealth* v. *Funches*, 379 Mass. 283, 292 (1979) (because key witness testified on direct and refused to answer questions on cross-examination, direct testimony struck). Nor is this case equivalent to a denial of the right to examine a witness. See *Commonwealth* v. *Johnson*, 365 Mass. 534, 543-544 (1974) (violation of defendant's right of confrontation to limit cross-examination because alleged victim feared, or did not wish to answer, questions). See also *Smith* v. *Illinois*, 390 U.S. 129, 131-132 (1968) (defense counsel not allowed to ask witness for name and address even though witness admitted that the name he first gave was false).

The defendant's confrontation rights were protected here, because he had ample *opportunity* to cross-examine the child. See *Commonwealth* v. *Funches*, *supra*, quoting *Davis* v. *Alaska*, 415 U.S. 308, 315-316 (1974). See also *United States* v. *Infelice*, 506 F.2d 1358, 1363 (7th Cir. 1974), cert. denied, 419 U.S. 1107 (1975) (defendant entitled to test the truth of a witness's testimony on direct examination). The defendant could have used, and did use,[5] the child's memory lapse and unresponsiveness to impeach her credibility.[6]

6. *The Denial of the Defendant's Motion to Dismiss Because of Improper Interviewing of the Children.*

The defendant filed a motion to dismiss or grant appropriate relief pursuant to Mass. R. Crim. P. 13 (c), 378 Mass. 871 (1979). The defendant argues that the testimony of the child victims was tainted by, or the product of, improper interviews conducted by the Department of Social Services, therapists, the police, and the prosecutor's office. The judge denied the defendant's motion.

There is ample evidence in this case that the children were interviewed by multiple persons — parents, social workers, attorneys, therapists, police officers, and other investigators. Despite the defendant's argument to the contrary, we think the judge was warranted in concluding that the children's ability to relate, recall, and recount their experiences independently was not so seriously undermined that their testimony should have been excluded.

The defendant's argument actually concerns the credibility of the children's testimony. The credibility of a witness focuses on both the individual's ability and willingness to tell the truth. *Commonwealth* v. *Ianello*, 401 Mass. 197, 202 (1987). The

---

[5] Defense counsel, in his closing argument, pointed to the child's inconsistent statements and said the child "was a very shy, unsure, unresponsive child," and otherwise impeached her credibility.

[6] The judge correctly stated to counsel: "One of the areas in cross-examination that can come out and that can be a fair and arguable point before a jury that this child testified and yet, within moments after testifying on direct, on cross-examination couldn't remember what she testified to. That goes directly to the credibility issue as far as the jury is concerned as far as assessing the child's credibility."

judge properly left the evaluation of the credibility of witnesses to the jury. *Commomwealth* v. *Widrick*, 392 Mass. 884, 889 (1984) (judge correctly denied defendant's motion for psychiatric examination to determine child witnesses' credibility where defendant insisted they fabricated accusations). *Commonwealth* v. *Bohannon*, 376 Mass. 90, 94 (1978) (evaluations of credibility are within exclusive province of trier of fact), *S.C.*, 385 Mass. 733 (1982). "Whether a witness testifies truthfully or according to some fictional script is for the jury to decide." *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 331 n.12 (1986).

### 7. *The Prosecutor's Closing Argument.*

The defendant challenges three aspects of the prosecutor's closing argument and contends that the argument (a) improperly commented on the defendant's postarrest silence, (b) suggested facts not in evidence, and (c) misstated the law and facts so as to shift the burden of proof onto the defendant.

a. *Comment on postarrest silence.* The defendant challenges the propriety of the following statement by the prosecutor, during his closing argument: "[Defense counsel] told you no one ever even asked the defendant a question during the two years that this case was pending, no one bothered to find out what he had to say. The prosecution wasn't interested in his side of the story. But, what [defense counsel] neglected to tell you ladies and gentlemen is that the Commonwealth is forbidden by law from approaching a defendant and talking to him after he's been arrested. But, the law, ladies and gentlemen, does not forbid a defendant from approaching the Commonwealth to tell his side of the case, if he wants to; and I say to you, ladies and gentlemen, that you have heard no evidence that the defendant ever tried to do that in this case." Defense counsel clearly invited the prosecutor's comments with remarks in his own closing argument.[7] *Commonwealth* v. *Earltop*, 372

---

[7] In his closing argument, defense counsel stated: "Until this trial, for the past two years, this defendant has barely been a person; he's been some type of disembodied Tooky the child abuser. No one has ever asked him a question. The only words ever said to him in connection with this case

Mass. 199, 206 (1977) (Hennessey, C.J., concurring), citing *Commonwealth* v. *Burnett*, 371 Mass. 13, 19 (1976) (stating that this court has given modest recognition to the "fight fire with fire" concept, but that a better course is to seek redress from the judge).

The prosecutor's comments were, however, improper, because they violated the defendant's right to remain silent after his arrest. See *Commonwealth* v. *Teixera*, 396 Mass. 746, 752 (1986); *Commonwealth* v. *Mahdi*, 388 Mass. 679, 694-695 (1983); *Commonwealth* v. *Haas*, 373 Mass. 545, 560 (1977), *S.C.*, 398 Mass. 806 (1986). "[E]vidence of a criminal defendant's postarrest, post-Miranda silence cannot be used for the substantive purpose of permitting an inference of guilt." *Commonwealth* v. *Mahdi*, *supra* at 694.

Defense counsel objected to the prosecutor's comments, and the judge instructed the jury, saying: "The Commonwealth commented in closing that the law forbids the Commonwealth from questioning a defendant after his arrest and that nothing prevents [the defendant] from approaching the Commonwealth. You are instructed to simply disregard those statements entirely from your consideration and do not engage in speculation as to what might or might not have occurred or to engage in conjecture as to what the law might or might not be in this regard. You are instructed to concentrate on the facts presented within this courtroom at this trial and apply the law as it's provided in these instructions."

The defendant argues, on appeal, that "[t]he grave nature of the prosecutor's comment, the delay in the curative instruction and the absence of overwhelming evidence of guilt" lead to the conclusion that the judge's curative instruction was insufficient to vitiate the prejudice caused by the remark. We disagree. The fact that the judge instructed the jury to disregard the prosecutor's comment a day after the closing arguments does not render the instruction ineffective. The closing argu-

---

prior to this trial are: Your rights; you are under arrest. You have the right to remain silent. That's the only question or only words put to him during the course of the almost two years that this matter has been pending."

ments, after the three-month trial, were lengthy, and required that the judge's instructions be given the following day. The judge instructed the jury before and after the closing arguments that the arguments were not evidence. Furthermore, the jurors were allowed to take written instructions into deliberations, supplying a lasting reminder of the jury instructions and judge's comments. The judge's instruction was sufficient to cure the prosecutor's improper reference to the defendant's postarrest silence. See *United States* v. *Doran*, 483 F.2d 369, 373-374 (1st Cir. 1973), cert. denied, 416 U.S. 906 (1974).

b. *Facts not in evidence*. Defense counsel objects to two portions of the prosecutor's closing argument which he contends made reference to facts not in evidence. The first deals with Dr. Schuman's expert testimony and the second deals with Dr. Emans's expert testimony.

The defendant objects to references in the prosecutor's closing argument to Dr. Schuman's expert testimony. The prosecutor stated: "[Dr. Schuman's] positive loop theory that he talked to you about is not any kind of recognized or accepted theory . . . . Dr. [Schuman] is not qualified to deal with children; . . . he does not have any expertise in sexual abuse."

A prosecutor may argue the evidence and reasonable inferences which might be drawn from that evidence. *Commonwealth* v. *Richenburg*, 401 Mass. 663, 675 (1988). *Commonwealth* v. *Francis*, 391 Mass. 369, 372 (1984). Here, however, the prosecutor's remarks appear to have gone beyond the scope of the evidence. The evidence showed that Dr. Schuman was not a child psychiatrist, that he had no formal training in child psychiatry, that the one article he authored on the subject of sexual abuse was based on his clinical experience in seven contested custody cases. The prosecutor's statements that Dr. Schuman's theory "is not . . . recognized or accepted" went beyond the reasonable inferences which could be drawn from that evidence.

In response to defense counsel's objection, the judge instructed the jury "to disregard that statement as there was no evidence or testimony offered by the Commonwealth that it is not a recognized theory." We conclude that the judge's curative

instructions removed any reasonable possibility of prejudice resulting from the prosecutor's improper remarks. *Commonwealth* v. *Weaver*, 400 Mass. 612, 616 (1987).

The defendant also objects to the prosecutor's characterization of Dr. Emans's expert testimony: "You heard Dr. [Emans] describe how child molesters often engage in something called vulva[r] intercourse which does not involve penetration to the vagina and which would not show physical findings in an examination." Although Dr. Emans did testify that sexually abused children may have engaged in "vulvar coitus," without actual penetration, she did not refer to the common practices of child molesters. The prosecutor's comments went beyond the evidence. *Commonwealth* v. *Johnson*, 374 Mass. 453, 459 (1978) (stating that prosecutor's argument cannot comment on facts not in evidence). See *Commonwealth* v. *Ryan*, 8 Mass. App. Ct. 941, 941 (1979) (where prosecutor stated that sperm is not always present in an ejaculation, without proper evidentiary foundation).

The judge, however, gave a curative instruction to the jury after defense counsel objected to the prosecutor's statements. "The Commonwealth made certain references in closing argument relative to testimony by experts on the use of objects by child abusers and the practice of vulva[r] intercourse by child abusers. The statements as made would suggest that there was evidence by experts presented as to traits exhibited or conduct engaged in by child abusers. You are instructed to disregard those statements as there was no evidence of the use of objects or vulva[r] intercourse either as a trait or conduct engaged in by child abusers." "We shall not assume that jurors will slight strong and precise instructions of the trial judge to disregard the matters which have been withdrawn from their consideration." *Commonwealth* v. *Prendergast*, 385 Mass. 625, 631 (1982), quoting *Commonwealth* v. *Gordon*, 356 Mass. 598, 604 (1970). The judge's instruction eliminated any prejudicial effect arising out of the prosecutor's statement. See *Commonwealth* v. *Borodine*, 371 Mass. 1, 9 (1976), cert. denied, 429 U.S. 1049 (1977) (judge's instructions to jury adequately protected defendant's rights); *Commonwealth* v. *Stone*, 366 Mass.

506, 515 (1974) (prosecutor's comments in closing argument about facts not in evidence were not prejudicial, particularly in view of limiting instructions).

c. *Burden of proof.* The defendant argues that the prosecutor, in his closing argument, misstated the law of common scheme so as to shift the burden of proof onto the defendant. The prosecutor stated: "The Court will tell you in substance that if you find that the defendant was engaged in a common scheme or plan abusing these children, then you can use their testimony to corroborate each other and to rebut the defense position that nothing happened. That instruction is given to you, ladies and gentlemen, because it is the law, and you should, and must, apply it.

"  . . . .

"But [the defendant] was unable to point to one single thing in the whole world that would account for why all these children and parents have turned against him."

A prosecutor cannot comment on a defendant's failure to contradict testimony and cannot make statements that shift the burden of proof from the Commonwealth to the defendant. See *Commonwealth* v. *Sherick*, 23 Mass. App. Ct. 338, 343-346, *S.C.*, 401 Mass. 302 (1987). The judge correctly instructed the jury that "evidence of common scheme is not to be used to rebut the testimony of the defendant. The defendant is under no duty or obligation to rebut any evidence presented. It can be used, if at all, to corroborate the children's testimony." We are unwilling to assume that the jury did not heed those instructions. See *Commonwealth* v. *Errington*, 390 Mass. 875, 882 (1984), citing *Commonwealth* v. *Jackson*, 384 Mass. 572, 579 (1981) and *Commonwealth* v. *Leno*, 374 Mass. 716, 719 (1978).

8. *The Videotaped Testimony of a Child Witness.*

At trial, one child victim, six years old at the time of trial, testified in the judge's chambers in the presence of the judge, the defendant, and counsel. The judge found by a preponderance of evidence that testifying in open court would produce such trauma as would warrant use of an alternative testimonial procedure. The child's testimony was recorded on videotape and shown to the jury in open court at a later date.

After this case was tried, this court held G. L. c. 278, § 16D, which allows the presentation of a sexually abused child's testimony by videotape or simultaneous transmission, to be unconstitutional to the extent that it violated a defendant's right to confrontation by allowing a child witness to testify outside the physical presence of the defendant. *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 547 (1988). This court also held that, in instances where testimony is videotaped outside the presence of the jury, the Commonwealth must establish a compelling need by showing that the procedure is necessary to avoid severe and long lasting emotional trauma to the child. *Id.* at 550-551.

Unlike *Bergstrom*, the defendant here was present in the room when the child's testimony was videotaped. The defendant's challenge is that the judge failed to make a finding of "compelling need" before allowing the videotaped testimony.[8] Although the judge did not use the term "compelling need," it is clear to us, from the judge's findings and in light of all the circumstances, that the judge considered the need to be compelling.

Three witnesses testified regarding the presentation of the child's testimony by videotape: the child's mother, the child's therapist, and a pediatrician. The child's mother testified that her son was reluctant to talk about Fells Acres, and that he reacted to the topic by holding his knees up, covering his eyes, clenching his fists, and grinding his teeth. The child's mother also testified that when she described the big courtroom and the smaller alternative room to her son, he stated that he would prefer the little room because of the fewer number of people. She testified further that her son "couldn't deal with" any of the practice questions in the courtroom; the child responded to questions by getting up, walking around the room, trying to change the subject, and putting his head on the table. The

---

[8] The defendant's brief, filed before the *Bergstrom* decision, argued that G. L. c. 278, § 16D, was unconstitutional on numerous grounds. Having already considered the constitutionality of the statute in *Bergstrom*, we now focus on those issues the defendant raises in his reply brief, filed after the *Bergstrom* decision was issued.

child's therapist, John Langfitt, met with him on a weekly basis for eighteen sessions. Langfitt testified that the child became more anxious, concerned, and aggressive as he prepared to testify in court. The child's anxiety abated after he expressed to Langfitt his desire to testify in the little room, and Langfitt said he would do what he could. Additionally, Dr. Eli Newberger, a pediatrician, had testified as an expert witness that he believed there was a strong likelihood that emotional harm would ensue to children who testified at trial in the courtroom. There was ample evidence of a compelling need to use videotaped testimony because of the severe and long lasting emotional trauma to this child if made to testify in open court. See *Bergstrom, supra* at 550-551.

We stated in *Bergstrom* that, "in constitutional terms, a videotape should be required to convey to the jury . . . the totality of the circumstances involved in the giving of testimony." *Id.* at 549 n.16. The defendant argues that the videotape was deficient because only the child, the child's mother, and questioning attorney were visible. Also present in the room, but not visible on the videotape, were the defendant, opposing counsel, the judge, the court reporter, and a court officer. Ideally, all persons present in the room during the taping would be visible in the videotape.[9] It is not, however, a fatal flaw to

---

[9] Because the judge in this case did not have the benefit of the *Bergstrom* opinion, we will not hold her to stringent standards regarding the quality of the videotape. We add that the judge's instructions to the jury before the viewing of the videotaped testimony made clear to the jury who was present during the videotaping. She instructed the jurors: "I will tell you now that the taping procedure took place in my chambers, that it was set up in there, and that present in chambers — you won't be able to see everyone on that film as you would if they were in the courtroom — but I was present; the court reporter was present; also for the Commonwealth the District Attorney, [the prosecutor] was present on one portion of the questioning, and you'll see him changing seats in there. And on behalf of the defense, [defense counsel]. The defendant was also present within the lobby. So that that is the number of people, and we also had one court officer as well as a staff member. We reduced the number of staff people so that there would be fewer people around as a distraction, as far as the child was concerned. So that the testimony, as far as he was concerned, it was preferable that it be done in a smaller surrounding with fewer people around and not in the presence of having fourteen people looking at him as he was testifying."

an otherwise satisfactory videotape. See *Bergstrom, supra* at 549 (criticizing videotape for poor color, poor sound, distracting background noises, obstructed view of the child witness, and disembodied voices).

9. *The Defendant's Rights to a Fair Trial and Effective Assistance of Counsel.*

At trial, the judge allowed the child witnesses to testify from a child-sized table and chair placed in front of the jury box. The judge and questioning attorneys sat around the table. The defendant sat at counsel table. The child was allowed to bring a toy into the courtroom and had a parent sit behind him or her. The judge instructed the attorneys to make objections quietly into a microphone during a child's testimony. The judge ruled on the objections immediately and heard arguments based on the objections after the testimony.

On appeal, the defendant makes a broad objection to the inability of counsel effectively to register valid objections and the prejudicial nature of the courtroom set-up, and argues that he was thereby deprived of his rights to effective assistance of counsel and to a fair trial. The defendant cites one case which is wholly inapplicable. We find no error.

A judge is afforded wide discretion in fashioning procedures and modifying standard trial practices to accommodate the special needs of child witnesses. See *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 553-554 (1988) (stating that measures should be taken to reduce the adverse impact of testifying on child witnesses); *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 332 (1986). We have recognized the plight of child sexual abuse victims, and the difficulties a particular child may face in trying to testify in a traditional courtroom setting. *Bergstrom, supra* at 552. "[A] judge may require that the environment in which a witness is to give testimony may be made less formal and intimidating." *Id.* at 553.

The judge here protected the child witnesses to the extent possible while also safeguarding the defendant's rights. The judge permitted defense counsel to confer with each other and with the defendant and then to return to the witness with additional questions following the conferences. Furthermore, the

judge explained the special practices to the jury to avoid any possible prejudice to the defendant. The defendant's right to a fair trial and assistance of counsel were not compromised.

10. *The Defendant's Renewed Motion for a New Trial Based on Allegations of Juror Misconduct.*

Shortly after the jury returned the guilty verdicts, the defendant's attorneys received information that one of the jurors had been raped as a teenager, and that her assailant had been sentenced to a prison term for the rape. We have already affirmed the Superior Court judge's denial of the defendant's original motion for a new trial on the ground of alleged juror bias. 399 Mass. 617, 630-631 (1987).[10] The defendant's renewed motion for a new trial based on juror misconduct revealed facts unknown to the court at the initial hearing. The new information includes the assailant's name, the address where the assault occurred, and information about the subsequent trial and conviction of the assailant. Defense counsel waived further hearing on the renewed motion and relied on affidavits and memoranda of law.

We agree with the Superior Court judge's conclusion that the documents submitted merely "address[] the prior event in the subject juror's life with greater specificity than the original motion." We have already concluded, after reviewing the judge's denial of the original motion for a new trial, "that the judge's determination that the juror was impartial was not clearly erroneous." *Id.* at 627. We find nothing in the additional information offered by the defendant that affects that conclusion. The defendant has failed to show, through the additional information submitted, "that the juror was actually prejudiced against him." *Id.* The additional information merely establishes facts pertaining to the sexual assault, and does not establish that the juror deliberately concealed information from the court or the parties, or that she was biased.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

---

[10] That decision chronicles the informant's telephone call, the defendant's motion, and the subsequent in camera hearing at which the juror testified. 399 Mass. 617, 618-624 (1987).