## COMMONWEALTH vs. LAURA TUFTS.

Norfolk. May 3, 1989. — August 21, 1989.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Confrontation of witnesses. *Child Abuse. Rape. Indecent Assault and Battery. Witness*, Child. *Evidence*, Videotape.

On appeal from the denial of the defendant's motion for a new trial claiming that her prosecution for sexual abuse of two minor children violated art. 12 of the Massachusetts Declaration of Rights because there was no actual or possible "face to face" confrontation, i.e., eye contact between her and a child witness during the videotaping procedure at which the defendant was present, this court, assuming the defendant had preserved her appellate rights, concluded that the judge was warranted in finding that the defendant's view of the witness was not obscured and that her confrontation rights were not violated. [614-616]

This court concluded that the quality of a videotape recording of testimony of a child witness, presented to the jury at the trial of indictments for the sexual abuse of the child, was adequate. [616-617]

INDICTMENTS found and returned in the Superior Court Department on December 10, 1986.

The cases were tried before *William H. Carey*, J., and a motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard L. Dahlen* for the defendant.

*Stephanie Martin Glennon*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J.   The defendant, Laura Tufts, was convicted by a jury in June, 1987, of several indictments charging rape, indecent assault and battery, and child pornography. She took no appeal from her convictions. In August, 1988, she filed a motion for a new trial claiming that the use of videotaped testimony of the child victim deprived her of her right to confront the witnesses against her. After a hearing, the motion was

denied. She now appeals from the denial of her motion for a new trial. We transferred the case to this court on our own motion.

The defendant and her codefendant, Joseph Dockham,[1] were tried for the sexual abuse of the defendant's two minor children, a four year old boy and an eighteen month old girl. The four year old boy was the only witness to the alleged events and the principal witness for the prosecution at trial. When called to testify, the child witness answered general questions about himself, his friends, school, and about the foster family he was living with at the time of trial. He testified that the defendant had taken pictures of him and his sister but was not responsive to questions about what he was doing when the pictures were taken. He began to kick, move around in his seat, and turned around in his chair to face the wall of the courtroom behind the judge. He testified that things had happened that he did not like, that things had happened at his house besides taking pictures, but stated that he did not remember what other things had happened. When asked if anything else had happened to him, he responded that he "didn't know it anymore," he did not "remember any of it." The judge allowed a brief recess to allow the child's foster mother, in the presence of defense counsel, to encourage the boy to answer questions.

During the recess, the judge allowed the prosecutor to ask some questions of the child witness in the judge's lobby to refresh his recollection. The child witness made a detailed statement about how the defendant and codefendant had taken pictures of him and had touched him and his sister. He stated that the defendant had touched his penis with her hands and her mouth. He said that the codefendant had touched his penis with his mouth and had tried putting his penis up the child's "bum"; the penis "got hard and fit in a little bit." The child stated further that both the defendant and codefendant touched the witness's sister and made him touch his sister's vagina. The boy stated that the codefendant took pictures while the de-

---

[1] Dockham's convictions are the subject of a separate appeal. See *Commonwealth* v. *Dockham, post* 618 (1989). We present only the facts relevant to this appeal.

fendant was "sucking [his] penis," and that the defendant took pictures while the codefendant was "sucking [the girl's] vagina." The child agreed to answer some of the same questions again in the courtroom.

When the child witness resumed the stand in the courtroom, he was biting his shirt, could not speak, turned around in his chair, and put his head on the railing. When asked if someone did something while he lived with the defendant, he responded, "I already said it. Now enough's enough." When further questioning elicited no response from the child witness, the judge called another brief recess.

The judge again called the child witness into the lobby. The boy stated that he was not talking, that he had had enough, and that he was not answering anymore. The judge allowed the child's foster mother to come into the lobby. The child thereafter agreed to answer questions in the courtroom.

The child witness resumed the stand before the jury. He testified that he and his sister had been touched but refused to answer additional questions, saying that he had "already said it." The judge, at that point, allowed the foster mother to sit in the front of the courtroom. The child again stated that he was not answering any questions, saying, "I said that was enough." The judge concluded that they were not going to make any progress with the child witness that day and recessed the trial until the following morning.

At a lobby conference, the attorneys and the judge discussed the situation. The judge stated: "I am going to permit great leeway with this child . . . [n]ot only because he's a child but because of the fact that at least I know now from what he said in the lobby, without any real prompting at all, as to what his testimony and observations are . . . [p]articularly when he assured me without any pressure at all that he was prepared to answer the questions."

The next day, during a lobby conference, the judge stated that he would permit the prosecutor to ask leading questions of the child witness. He reiterated his view that, "I'm going to be lenient, at least in getting this boy's story told. Whether it's believed or not is another story. I'm at least satisfied that he has a story to tell because I heard it."

Commonwealth v. Tufts.

When the child took the stand for the fourth time, the prosecutor attempted to elicit the child's testimony with the use of anatomically correct dolls. The child witness had difficulty sitting up straight in the chair. When the prosecutor asked for a recess, the judge encouraged the boy to answer questions. After the child witness stated that he would not answer questions for anyone, the judge called a recess.

The prosecutor then moved to videotape the child's testimony outside the presence of the defendants and the jury under the provisions of G. L. c. 278, § 16D (1988 ed.). The judge allowed the videotaping of the child witness's testimony but conducted the videotaping in the defendant's and codefendant's presence.[2]

The judge, in his written findings of fact and rulings of law, found that the child was unable to answer questions in the courtroom about the alleged sexual abuse. The judge found, as fact, based on the lobby conferences at which the child witness gave a detailed account of sexual abuse, that, "at a minimum, [the child] at least had a story to tell, but would not tell it in the presence of the jury or defendants," and concluded "that the courtroom is not a suitable setting for him to tell a story which he has the ability to tell."

Based on the child's courtroom testimony, his conduct in the courtroom, the voir dire hearings conducted with the child witness in the lobby before and during trial, and the judge's observations of the child over the course of three days, the judge found, by a preponderance of the evidence, "that for [the child] to tell his story in the presence of the jury and the defendants in open court would have the consequence of a likelihood on his part to suffer psychological or emotional trauma." After the hearing on the motion for a new trial, the judge amplified his findings by stating "that the same behaviors exhibited by [the child] in the courtroom as contrasted with his appearance and behavior as witnessed by [the judge] in the lobby would have satisfied [the judge] beyond a reasonable

---

[2] This videotape was later shown to the jury in the presence of the judge, the defendants, their counsel, and the prosecutor.

doubt that it was necessary to record [the child's] testimony outside the courtroom in order to prevent [the child] from suffering psychological or emotional trauma." [3]

The judge conducted the videotaping in the room where the grand jury ordinarily sits, a room approximately seventeen by twenty-three feet in area. A court officer stood inside the room in front of the door. The judge sat at the head of a twelve by four foot rectangular table. The child witness sat to the judge's right with his foster mother. The court clerk sat to the foster mother's right. The two defendants sat together, to the clerk's right, approximately twelve feet from the child. The court reporter sat to the judge's left. The prosecutor and defense attorneys sat to the court reporter's left. The judge established the seating arrangement and rejected the prosecutor's request to seat the child's foster mother so as to obstruct the views of the defendant and codefendant.

On this appeal from the denial of her motion for a new trial, the defendant challenges the quality of the videotape and argues that her constitutional right to confrontation has been violated. [4]

1. *The defendant's confrontation right.* This case was tried in June, 1987, before we decided *Commonwealth* v. *Bergstrom*, 402 Mass. 534 (1988). In *Bergstrom*, we held that G. L. c. 278, § 16D, violated art. 12 of the Massachusetts Declaration of Rights to the extent that it allowed a child witness, through electronic means, to testify outside the physical presence of the defendant and the jury. Article 12 guarantees a criminal defendant the right "to meet the witnesses against him face to face." The defendant argues that her prosecution violated art. 12 because there was no actual or possible "face to face" con-

---

[3] The defendant does not challenge the judge's findings as to the necessity for the use of the videotape procedure.

[4] The defendant failed to object to the seating arrangement at the videotaping and to the quality of the videotape at the trial; the defendant also failed to raise the issues by a direct appeal. See *Commonwealth* v. *Pisa*, 384 Mass. 362, 366 (1981) ("Issues not raised at trial or pursued in available appellate review are waived"). Although the issues were not properly preserved, we address them here because of their significance.

frontation, i.e., eye contact between her and the child witness during the videotaping procedure.[5]

In this case, unlike the circumstances in *Bergstrom*, the defendant and codefendant were both present during the videotaping procedure. See *Bergstrom, supra* at 539 (both child witnesses testified in a room separate from the courtroom where the jury and defendant were located). The defendant's argument is that her physical position during the videotaping prevented eye contact with the child witness. We reject the defendant's contention that no eye contact was possible as inconsistent with the record as well as with the judge's findings of fact. The judge's memorandum of decision regarding the defendant's motion for a new trial explicitly stated that the judge had denied the prosecutor's request to obstruct the defendant's and codefendant's vision, that there was no intent to obstruct the codefendants' vision, and that with periodic exceptions their view was never obstructed. According to the judge's memorandum "by slight bending on their parts, [the defendants] would at all times see [the child witness], even on occasions when there could be a periodic obstruction to their view." Compare *Coy* v. *Iowa*, 108 S. Ct. 2798 (1988) (ruling that Sixth Amendment to the United States Constitution was violated when child witnesses were shielded from defendant by a screen). Additionally, the record shows that the child witness was well aware of the defendant's and codefendant's presence in the room as evidenced by the child's repeated comment, "Can we all go outside, except Laura and Joe?"

The Commonwealth correctly points out that neither the defendant nor her codefendant objected to the seating arrangement or claimed any interference with their view at the time of the videotaping procedure. After the judge decided to allow the videotaping procedure, he invited objections on the record. The defendant and codefendant raised only the issues of the foster mother's presence in the room and the lack of expert tes-

---

[5] The defendant makes no argument pertaining to the absence of the jury during the videotape testimony. Thus, this issue is deemed waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). *Commonwealth* v. *Bertrand*, 385 Mass. 356, 358 (1982).

timony whether the child witness would suffer emotional trauma if he testified in open court. In argument on the motions to videotape the child witness, the defendant and codefendant raised confrontation rights only as related to videotaping outside of their presence. Only after the *Bergstrom* decision was released did the defendant raise her current challenges in the form of a motion for a new trial.

In short, we conclude that, if the defendant preserved her rights below, we are satisfied that the judge was warranted in finding that the defendant's view of the witness was not obscured and that her confrontation rights were not violated. There was no error.

2. *The quality of the videotape.* The defendant also challenges the adequacy of the videotape and claims deficiencies inherent in the image given to the jury by the videotape. The defendant quotes at length from the *Bergstrom* opinion in which we stated:

> "Many of the technical aspects of these videotapes are troublesome. The color and sound were not true. . . . Often the child would play with the microphone wire, creating very loud crackling noises that interfered with both sound and concentration. Due to the camera angle, throughout much of the first child's appearance her right hand fully or partially obscured her face; at times, when she leaned back in the chair, her face was nearly out of camera range. The electronic techniques that were used showed neither the face of the judge presiding nor the image of the attorneys. The disembodied voices of the participants in the interrogations were transmitted. Also, unidentified persons were seen on the screen without explanation." *Bergstrom, supra* at 549.

We have viewed the videotapes in this case and are impressed that their quality far exceeds that of *Bergstrom*. The videotapes here are more like those in *Commonwealth* v. *Amirault,* 404 Mass. 221 (1989), than those in *Bergstrom*. The color was true. While the child played momentarily with the microphone

wire, creating thuds, this never interfered with the sound; nor was the child's testimony inaudible. The sound was clear. The videotape clearly shows all persons in the room, with the exception of the defendants who were out of camera range. The camera was directly centered on the child, enabling jurors to observe the child. The child's movements never caused him to be out of camera range. At times, the child put his face down or turned away from the camera, but this occurred only when the child was being unresponsive to questions. There were no disembodied voices. All attorneys were always visible, though sometimes only by profile.

The judge below, like the trial judge in *Commonwealth* v. *Amirault, supra,* did not have the benefit of the *Bergstrom* opinion. We will not, therefore, hold him to "stringent standards regarding the quality of the videotape." *Commonwealth* v. *Amirault, supra* at 242 n.9. We stated in *Bergstrom* that, "in constitutional terms, a videotape should be required to convey to the jury . . . the totality of the circumstances involved in the giving of testimony." *Commonwealth* v. *Bergstrom, supra* at 549 n.16. We expect that, in trials having the benefit of the *Bergstrom* opinion, videotapes will show all persons present in the room as the jury would perceive them in open court. *Commonwealth* v. *Amirault, supra* at 242 (ideally, all persons present in room during taping should be visible in the videotape). It would have been better if jurors could have observed the reactions of the defendants to the child witness's testimony during the videotaping, but the fact that the defendants in this case were not visible on the videotape is not a fatal flaw to an otherwise satisfactory videotape. See *Commonwealth* v. *Amirault, supra* at 242-243.

The order denying the motion for a new trial is affirmed.

*So ordered.*[6]

---

[6] During oral argument, and by postargument letters, appellate counsel for the defendant has called to our attention that the defendant's trial counsel was administratively suspended prior to, and during, the trial. We have noted that such a fact, standing alone, is insufficient to establish ineffective assistance of counsel. See *Commonwealth* v. *Thomas,* 399 Mass. 165, 169 (1987).