COMMONWEALTH vs. THOMAS WALKER.

Suffolk.  September 11, 1979. — November 30, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* Examination of jurors, Challenge of jurors, Disclosure of evidence, Conduct of prosecutor, Assistance of counsel. *Jury and Jurors. Evidence,* Police report, Hearsay, Relating to deliberation by jurors.

At the trial of a black man on charges arising from a violent racial confrontation with white youths, where the judge put the issue of racial prejudice before the prospective jurors in plain and unmistakable language, with follow-up questions when appropriate, there was no error in the denial of the defendant's motions for voir dire conducted by counsel and for use of "the struck method" of jury selection. [299-300]

At the trial of a black man for assault and battery on three white youths, where approximately one-seventh of the prospective jurors interviewed were black, the prosecutor did not use all of his eight peremptory challenges, one-sixth of the jurors who rendered the verdict were black, and the judge in denying a motion for a new trial concluded that he did "not find that there was a systematic exclusion of any discrete group," this court declined to substitute its judgment for that of the trial judge. [300-301]

---

[15] Cf. *Burks* v. *United States,* 437 U.S 1, 11, 15 (1978); *Greene* v. *Massey,* 437 U.S. 19 (1978).

Statements made by an unidentified caller to a police cadet and by him entered in a stolen car report kept in the regular course of business did not constitute hearsay so as to render erroneous admission of the report in evidence under G. L. c. 233, § 78, at the trial of the defendant upon a proper foundation being laid and when not offered for the truth of the matters stated.  [302]

Findings of the judge on a motion for a new trial by a defendant convicted of crimes that the prosecutor had acted in good faith, and had not misled defense counsel by a characterization of a witness at the scene as an effective rebuttal witness for the Commonwealth were accepted by this court as disposing of the defendant's assertions of prosecutorial misconduct.  [302-304]

Conclusions of the judge, on a motion for a new trial by a defendant convicted of crimes, respecting the efforts and presentation of the case by defense counsel and his behavior and apparent trial strategy were upheld by this court against the defendant's claim of ineffective assistance of counsel.  [304]

There was no error on the last day of a criminal trial in the judge finding a juror indifferent after questioning at a lobby conference which defense counsel said he did not wish the defendant to attend.  [304-305]

INDICTMENTS found and returned in the Superior Court on November 8, 1976.

The cases were tried before *McGuire, J.,* and motions for a new trial were heard by him.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Edward Berkin & Robert J. Doyle* for the defendant.

*Timothy P. O'Neill,* Assistant District Attorney (*Kevin Connelly,* Special Assistant District Attorney, with him) for the Commonwealth.

BRAUCHER, J.  The defendant was convicted by a jury in May, 1977, on three indictments for assault and battery by means of a dangerous weapon (an automobile), three indictments for operating a motor vehicle and going away after causing injury to a person, and one indictment for operating an automobile so that the lives and safety of the public might be endangered.  On June 1, 1977, he was sentenced to concurrent terms in prison of not less than four nor

more than seven years on the assault charges; the other indictments were placed on file. Subsequently, two motions for new trial were denied; on August 3, 1979, pursuant to the order denying the second motion, he was released on personal recognizance. He appealed to the Appeals Court pursuant to G. L. c. 278, §§ 33A-33G, and we transferred the case to this court on our own motion. The defendant assigns error in the jury selection process, particularly the Commonwealth's use of peremptory challenges; he also raises evidentiary issues and claims prosecutorial misconduct and ineffective assistance of counsel. We affirm the convictions.

The charges arose out of an incident in Dorchester on the night of July 4, 1976, following a violent racial confrontation between black people and white youths. There was testimony that the defendant, a black man, drove his automobile at a high rate of speed, turned it toward two young white men and a young white woman, struck and seriously injured all three, and fled the scene on foot. The main issue at trial was the identity of the driver. There was testimony that the defendant was elsewhere at the time, and three witnesses, including Kathleen Travers, a white woman, testified that the driver was a white male.

1. *Jury selection procedure.* The judge denied the defendant's motions for voir dire conducted by counsel and for use of "the struck method" of jury selection.[1] But he did conduct a voir dire of prospective jurors individually, and he allowed the defendant's motion for extra peremptory challenges, granting eight for the defendant and eight for the Commonwealth. He asked a number of questions bearing on racial bias, but refused to ask additional questions submitted by the defendant. We think the procedure followed satisfied both G. L. c. 234, § 28, as amended through St. 1975, c. 335, and *Ham* v. *South Carolina*, 409 U.S. 524 (1973). See *Ristaino* v. *Ross*, 424 U.S. 589, 597 (1976);

---

[1] This means that the court would first find enough indifferent jurors to equal the number needed to serve on the jury, plus the total number of peremptory challenges. Only then would the parties exercise their peremptory challenges.

*Commonwealth* v. *Horton*, 376 Mass. 380, 394-395 (1978); *Commonwealth* v. *Dickerson*, 372 Mass. 783, 792-795 (1977). The judge put the issue of racial prejudice before the prospective jurors in plain and unmistakable language, with follow-up questions when appropriate. He had broad discretion as to the questions to be asked, and was not required to put the "open-ended" questions requested by the defendant to permit the prospective juror to "talk out his feelings." See *Commonwealth* v. *Grace*, 370 Mass. 746, 757 (1976); *Commonwealth* v. *Bailey*, 370 Mass. 388, 399 n.13 (1976); *Commonwealth* v. *Core*, 370 Mass. 369, 375-376 (1976).

2. *Peremptory challenges.* The defendant argues that the prosecutor, by the use of his peremptory challenges, systematically excluded black jurors and thereby denied the defendant a fair trial by an impartial jury. See *Commonwealth* v. *Soares*, 377 Mass. 461, 473-493 (1979). In the *Soares* case, the point was raised by exceptions to each challenge of a prospective black juror and to denial of a requested hearing. *Id.* at 473 n.8. In the present case the defendant noted for the record the prosecutor's challenges of black persons. He took no exceptions, but the point was presented to the judge by the defendant's second motion for a new trial, and the judge denied the motion on the merits. We think the record, including the proceedings on the motion, is sufficient to present the issue. See *id.* at 493 n.38.

Sixty-four prospective jurors were interviewed on voir dire before the jury of fourteen were sworn. At least nine were black; the classification of a tenth, who had a Hispanic surname, was disputed. Thirty-five, including two who were black, were excused for cause. The defendant peremptorily challenged eight prospective white jurors; the prosecutor used only seven peremptory challenges, eliminating five blacks, the Hispanic, and one white. Two blacks were sworn as jurors, and both were among the twelve who rendered the verdicts.

The *Soares* case was a murder case and there were three defendants; under G. L. c. 234, § 29, each defendant was

entitled to sixteen peremptory challenges and the prosecutor was entitled to forty-eight. In the present case the statute provided for only four such challenges for the defendant and four for the prosecutor. Cf. Mass. R. Crim. P. 20 (c) (effective July 1, 1979), 378 Mass. 890. The defendant made a tactical decision to seek additional peremptory challenges, and was successful in obtaining eight for each side. The danger that black jurors may be effectively excluded obviously increases as the number of peremptory challenges increases. But we think the principle of the *Soares* case retains its force even though the defendant's tactics contribute to the result.

The opinion of the court in the *Soares* case states, "We begin with the presumption of proper use of peremptory challenges." The presumption is rebuttable on a showing that "(1) a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood they are being excluded from the jury solely by reason of their group membership." *Id.* at 489-490. It is for the trial judge to "determine whether to draw the reasonable inference that peremptory challenges have been exercised so as to exclude individuals on account of their group affiliation." *Id.* at 490, 492 n.37.

In the present case the *Soares* issue was presented to the trial judge by the second motion for new trial. He had the benefit of the *Soares* opinion, and he recognized "the difficulty of recreating the empanelment of the jury." His conclusion was, "I do not find that there was a systematic exclusion of any discrete group."

We think we should not substitute our judgment for that of the trial judge on the record before us. Peremptory challenges in the present case of five out of seven blacks, or of six out of eight, obviously present a less compelling showing than challenges of twelve out of thirteen in the *Soares* case. Although it is not at all conclusive, we note the fact that one-sixth of the jurors who rendered the verdicts were black, and that approximately one-seventh of the jurors interviewed were black.

3. *Stolen car report.* Over the defendant's objection and exception, the judge admitted in evidence a police record of a stolen car report. The police cadet who made the record testified that it was kept in the regular course of business, and the judge admitted it as a regular business entry pursuant to G. L. c. 233, § 78. The defendant assigns error on the ground that the statements made to the police cadet by an unidentified person were inadmissible as "second level" or "totem-pole" hearsay. See *Kelly* v. *O'Neil,* 1 Mass. App. Ct. 313, 316-317 (1973); Cf. *Bouchie* v. *Murray,* 376 Mass. 524, 528-530 (1978); *Commonwealth* v. *Alves,* 6 Mass. App. Ct. 572, 582-583 (1978); *Commonwealth* v. *Happnie,* 3 Mass. App. Ct. 193, 199 (1975).

The record in question identified the same automobile that was involved in the crimes charged, gave a name, telephone number and address for the owner, and bore a date and time stamp showing 9:31 P.M. on July 4, 1976. There was evidence that the crimes charged were committed before that time. The record gave the owner's name as "Mr. McGuigan." Mrs. McGuigan testified that she was the owner, that the telephone number was hers but the address was wrong, that the defendant had possession of the car in July, 1976, and was paying for it on a monthly basis, and that she made no call to the police. The prosecutor asked the jury to infer that the call was made by the defendant in an attempted cover-up.

The police cadet who testified had personal knowledge that the statements of the unidentified caller were made. The record of those statements was not offered for the truth of the matters asserted by the caller. Thus evidence of those statements did not constitute "second level" hearsay. A proper foundation was laid for the admission of the record under the statute, and the judge properly exercised his discretion to admit it.

4. *Prosecutorial misconduct.* The defendant asserts that the prosecutor knowingly adduced false evidence, suppressed exculpatory evidence, failed to cleanse the record of the false testimony, misled the defendant as to the substance

of the exculpatory evidence, exploited the false testimony, and thus deprived the defendant of a fair trial. These matters were fully explored at a hearing on the defendant's first motion for new trial. His claims fail because they are not supported by the judge's findings.

The witness Travers testified for the defense that she saw a white man driving the car in question at a high rate of speed. On cross-examination, she added she was in the company of friends, including Mary Ann Keough and Mary Ann's mother, Barbara Keough, and gave a telephone number and street of residence for Barbara. The prosecutor promptly instituted a search for the Keoughs, and so informed the court; defense counsel objected to any delay. After a lunch recess, the prosecutor called a police officer as a rebuttal witness, and the officer summarized the results of the search: "Negative, sir. Keoughs do not live at Robinson Street." Defense counsel made no objection, and did not cross-examine the officer, although statements of the prosecutor in the presence of defense counsel indicated that the officer had not left the court house. Unknown to the parties and the judge, another officer had found Mary Ann, and was bringing her to the court house. She arrived after closing arguments had begun, and did not testify. She told an assistant prosecutor that the car had gone by so quickly that it was impossible to see the driver's face. In his closing argument the prosecutor attacked Travers' credibility, referring to her testimony that "she was with two people at a given address which doesn't check out."

At a lobby conference the following morning, before the judge charged the jury, it was disclosed that the Keoughs did live on Robinson Street. Defense counsel asked the court to instruct the jury to disregard the rebuttal testimony. The prosecutor offered to reopen the evidence on this point, stating that Mary Ann "would have been very effective rebuttal." Defense counsel responded that it was not necessary to reopen the evidence, but that an instruction to disregard the rebuttal testimony would be proper. The judge then charged the jury at length, but did not include the requested instruction. Defense counsel made no objection.

At the hearing on the motion for new trial, defense trial counsel testified that Travers had told him before trial that Mary Ann was hostile to Travers' testimony that a white man was driving the car. He also testified that he made a tactical decision not to call Mary Ann as a witness. The judge found that the prosecutor had acted in good faith, and that the prosecutor did not mislead defense counsel by his characterization of Mary Ann as an effective rebuttal witness for the Commonwealth. In the absence of clear error, we accept those findings. See *Commonwealth* v. *Moynihan*, 376 Mass. 468, 473 (1978). Thus there was no showing of knowing presentation of false evidence, suppression of exculpatory evidence, or misleading of defense counsel. See *Commonwealth* v. *Earl*, 362 Mass. 11, 14-15 (1972). As the judge ruled, the evidence disclosed on the motion for new trial was available to defense counsel before trial. *Davis* v. *Boston Elevated Ry.*, 235 Mass. 482, 496 (1920). We also approve the judge's rejection of juror affidavits offered to prove the effect of the rebuttal testimony on the deliberations of the jury. See *Commonwealth* v. *Fidler*, 377 Mass. 192, 196-198 (1979).

5. *Ineffective assistance of counsel.* The defendant argues that he was deprived of the effective assistance of counsel. His argument was rejected by the judge in passing on his first motion for new trial, and we uphold the judge's conclusions that the efforts and presentation of defense counsel "were not characterized by serious incompetency, inefficiency, or inattention," and that "his behavior and his apparent trial strategy did not fall below the standard of an ordinarily skillful attorney practicing criminal law." See *Commonwealth* v. *Adams*, 374 Mass. 722, 729-731 (1978); *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

On the last day of trial, a juror informed the judge that defense counsel had in a previous case defended a person charged with assaulting the juror's sister-in-law. The judge called a lobby conference, and defense counsel said he did not wish to have the defendant present. Compare *Amado* v. *Commonwealth*, 349 Mass. 716, 722 (1965), with *Com-*

*monwealth* v. *Robichaud,* 358 Mass. 300, 303 (1970). After questioning the juror, the judge found him still indifferent, and defense counsel did not object. The judge found that in the circumstances defense counsel exercised reasonable judgment and that the defendant was not prejudiced. There was no error.

*Judgments affirmed.*