COMMONWEALTH *vs.* GEORGE CONEFREY, SR.

Barnstable. January 10, 1991. - May 6, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal*, Dismissal, Speedy trial, Grand jury proceedings, Defendant pro se. *Constitutional Law*, Speedy trial, Grand jury, Right of defendant in criminal case to act pro se, Confrontation of witnesses. *Grand Jury. Evidence*, Cross-examination.

In a criminal case, the entire six-month continuance period to which the defendant agreed in writing, because of court congestion, was excludable in computing the time within which his trial on a charge of indecent assault and battery was to commence under Mass. R. Crim. P. 36, with the result that the defendant was not entitled to the allowance of his motion to dismiss based on speedy trial grounds. [2-5]

In the circumstances of a criminal case, the presence in the grand jury room of a victim-witness assistant, an employee of the prosecutor's staff, seated silently behind the youthful complainant during the complainant's testimony, did not constitute a violation of art.12 of the Massachusetts Declaration of Rights and was in accordance with the standard set forth in Mass R. Crim. P. 5 (c). [5-8]

At the trial of an indictment for indecent assault and battery on a child
under age fourteen in which the defendant represented himself, the de-
fendant's constitutional right to conduct his own defense was violated
by the judge's prohibiting the defendant from personally cross-examin-
ing the complainant, his daughter, and a new trial was required. [8-14]

INDICTMENT found and returned in the Superior Court De-
partment on November 21, 1988.

A motion to dismiss was heard by *Gerald F. O'Neill, Jr.,*
J.; a second motion to dismiss was considered by *James J.
Nixon,* J., and the case was tried before him.

The Supreme Judicial Court granted a request for direct
appellate review.

*Nona E. Walker,* Committee for Public Counsel Services,
for the defendant.

*Julia K. Vermynck,* Assistant District Attorney, for the
Commonwealth.

GREANEY, J. A jury in the Superior Court found the de-
fendant, George Conefrey, Sr., guilty of indecent assault and
battery on his daughter, a child under fourteen. See G. L.
c. 265, § 13B (1988 ed.). We granted the defendant's appli-
cation for direct appellate review. We reject the argument
that his motions to dismiss should have been allowed because
he was denied the right to a speedy trial under Mass. R.
Crim. P. 36, 378 Mass. 909 (1979), or because an unautho-
rized person was present with the grand jury. We conclude,
however, that the defendant is entitled to a new trial because
his constitutional right to represent himself was violated. We
also comment briefly on an issue that may arise at retrial
concerning the seating arrangement for the complainant
when she testifies.

1. *Rule 36.* The alleged incident of sexual abuse took place
in 1986, when the defendant's daughter was eight years old.
The defendant was first indicted on July 16, 1987, for inde-
cent assault and battery on a child under fourteen. He was
arraigned on this indictment on August 4, 1987. The Com-
monwealth decided that it would not pursue this indictment,

and a second indictment for the same offense was returned on June 7, 1988. The defendant was arraigned on the second indictment on June 22, 1988. The defendant moved to dismiss the second indictment, asserting that inaccurate evidence had been provided to the grand jury that had voted to return it. On November 21, 1988, an assistant district attorney entered a statement of nolle prosequi which stated that the two pending indictments would not be prosecuted because inaccurate testimony had been presented to the grand juries.[1] On that same day, a third indictment was returned against the defendant for the same offense. The defendant was arraigned on this indictment on November 30, 1988.

On June 7, 1989, the defendant moved to dismiss the third indictment for the alleged violation of his right to be tried within a twelve-month time period, as provided for by Mass. R. Crim. P. 36 (b) (1) (C). The judge who presided at the trial denied the motion. The judge appears to have reasoned that the applicable time period under rule 36 was measured from the date of the return of the third indictment. Because less than seven months had elapsed since that date, the judge concluded that the defendant's rights under rule 36 had not been violated. The trial commenced on June 16, 1989.

As both the defendant and the Commonwealth now agree, the applicable twelve-month period under rule 36 began to run from the date the defendant was arraigned on the *first* indictment, see Mass. R. Crim. P. 36 (b) (1) (C), and Mass. R. Crim. P. 2 (15), 378 Mass. 844, 846 (1979); *Commonwealth* v. *Mattos*, 404 Mass. 672, 674 (1989), and not, as the judge seemed to believe, from the date of return of the third and final indictment. See *Commonwealth* v. *Gove*, 366 Mass. 351, 358 n.7, 359 (1974). All periods of time during which the same charges were pending against the defendant, regardless of the indictment to which they apply, are to be included for the purpose of computing the application of rule

---

[1] The record indicates that the first indictment was not formally made the subject of a nolle prosequi until after the trial. The failure to enter the nolle prosequi earlier apparently was the result of oversight.

36. There is to be excluded from the computation any period during which no charge was pending, see Mass. R. Crim. P. 36 (b) (2) (D); Reporters' Notes to Mass. R. Crim. P. 36, Mass. Ann. Laws, Rules of Criminal Procedure at 530 (1979), and any other period which rule 36 (b) (2) permits to be excluded.

The period between the date of the defendant's arraignment on the first indictment, August 4, 1987, and the date of trial, June 16, 1989, totals 682 days. This exceeds the twelve-month requirement by 317 days. The defendant concedes that 281 days are properly excludable under rule 36, leaving the Commonwealth, according to his calculations, with thirty-six days that he asserts cannot be justified.

The defendant, based on our examination of the court records and dockets, see *Barry* v. *Commonwealth*, 390 Mass. 285, 289 (1983), does not fully account in his calculations for at least one significant period of time which constitutes an exclusion. On April 21, 1988, the defendant agreed in writing to a waiver of his right to a speedy trial on the first indictment. The waiver requested that the case be continued until October, 1988, almost six months later, because of court congestion. The waiver was accepted by a judge and docketed. During this almost six-month period, the defendant made no objection to any delay caused by the continuance. Rule 36 (b) (2) (F) provides that any period of delay resulting from a continuance granted by the judge shall be excluded in computing the time within which trial must commence. In his computation, the defendant excludes the sixty-three day period of the continuance from April 21, 1988, when he signed the waiver, to June 22, 1988, the date on which he was arraigned on the second indictment. The defendant apparently takes the position that, for the purposes of rule 36, the continuance applied exclusively to the first indictment and lasted only until the return day of the second indictment.

The entire period between April 21, 1988, and October, 1988, is to be excluded. As a general proposition, court congestion by itself will not constitute an adequate justification

for the denial of the right to a speedy trial. See *Common-wealth* v. *Beckett*, 373 Mass. 329, 332-333 (1977). However, reasons of court congestion may be adequate to excuse delay when, as is the case here, a defendant has agreed to a continuance based on congestion, rendering him at least partially responsible for the delay, see *Commonwealth* v. *Dias*, 405 Mass. 131, 138-139 (1989); *Commonwealth* v. *Campbell*, 401 Mass. 698, 702 (1988); *Commonwealth* v. *Farris*, 390 Mass. 300, 305 (1983); *Barry* v. *Commonwealth*, *supra* at 298, and the judge who examined the defendant's waiver has implicitly determined that the continuance is in the best interests of justice under rule 36 (b) (2) (F).

It is not significant to the resolution of this issue that one indictment replaced another during the six-month period. The defendant made no objection during that time and did not request any clarification regarding the length of the continuance after the second indictment was returned. For purposes of analysis under rule 36, one charge was continuously pending against the defendant from his arraignment on August 4, 1987, until the date of trial, and all properly excludable periods of time are to be deducted from the time limit required for trial. The six-month written waiver executed by the defendant more than covers the thirty-six day period in issue. The defendant was not entitled to allowance of his motion to dismiss based on rule 36.

2. *Claim of an unauthorized person in the grand jury proceedings.* Relying principally upon *Commonwealth* v. *Pezzano*, 387 Mass. 69 (1982), the defendant argues that the third indictment should have been dismissed because there was an unauthorized person present in the grand jury room during the presentation of evidence to the grand jury. During the proceedings, before the complainant entered the grand jury room to testify, the prosecutor handling the case informed the grand jury that "the witness will be brought into the courtroom . . . in the company of Patricia Blair, who is a victim witness assistance [*sic*] with the District Attorney's office. She will be seated behind the testifying witness and out of her sight."

In the *Pezzano* case, we held that the presence of an unauthorized person during grand jury proceedings would cause the resulting indictment to be voided as a violation of art. 12 of the Massachusetts Declaration of Rights.[2] See *Commonwealth* v. *Pezzano, supra* at 70, 72-73. We indicated that the adoption of Mass. R. Crim. P. 5 (c), 378 Mass. 850, 851 (1979), permitting the presence of "such other persons who are necessary or convenient to the presentation of the evidence" to the grand jury, did not diminish our long-standing State constitutional protections in this area. We have noted that one of the reasons for keeping grand jury proceedings closed to third persons "is to shield [the grand jury] from any outside influences having the potential to 'distort their investigatory or accusatory functions.' " *Commonwealth* v. *Pezzano, supra* at 73, quoting *Opinion of the Justices*, 373 Mass. 915, 918 (1977). In particular, our decisions have expressed concern that the presence of certain persons might cause the grand jury to be "overawed or moved to act other than as the members deemed right." *Commonwealth* v. *Favulli*, 352 Mass. 95, 107 (1967). See also *Commonwealth* v. *Pezzano, supra* at 73; *Opinion of the Justices*, 373 Mass. at 919; *Opinion of the Justices*, 232 Mass. 601, 603 (1919); *Commonwealth* v. *Harris*, 231 Mass. 584, 586 (1919).

This concern is especially relevant when police witnesses are involved. We have held that police witnesses may not be present with the grand jury during the examination of other witnesses, see *Lebowitch, petitioner*, 235 Mass. 357, 362 (1920); *Opinion of the Justices*, 232 Mass. at 604; *Commonwealth* v. *Harris, supra* at 585-587, even if they are present

---

[2]Article 12 reads, in part, "And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land." In *Jones* v. *Robbins*, 8 Gray 329, 342-347 (1857), Chief Justice Shaw stated that "the law of the land" language in this article includes the requirement of lawful and proper presentment and indictment by a grand jury. If the grand jury proceedings are not conducted legally or properly, there may be a violation of art. 12. See also *Commonwealth* v. *Harris*, 231 Mass. 584, 585-586 (1919).

to provide security. See *Commonwealth* v. *Pezzano, supra* at 74. On the other hand, when the "other persons" present with the grand jury are assistants to the prosecutor, we have generally considered their presence to be unobjectionable, as long as they do not "appear in overbearing or intimidating numbers or seek unduly to impose their preferences on the jury." *Opinion of the Justices*, 373 Mass. at 919. See *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 206-209 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972); *Commonwealth* v. *Schnackenberg*, 356 Mass. 65, 69 (1969); *Commonwealth* v. *Favulli, supra* at 106. See also *United States* v. *Kazonis*, 391 F. Supp. 804, 805-806 (D. Mass. 1975), aff'd, 530 F.2d 962 (1st Cir. 1976), cert. denied, 429 U.S. 826 (1976).

The victim-witness assistant in this case was an employee of the district attorney's office, and although she was not a prosecutor, she did fill a legitimate role as a member of that office. See *Commonwealth* v. *Harris*, 409 Mass. 461, 469 (1991). See generally G. L. c. 258B, §§ 3-5 (1988 ed.); D.R. Simpson & H.J. Alperin, Summary of Basic Law § 725 (Supp. 1989). Because of the youth of the complainant, it was within the prosecutor's discretion to have the victim-witness assistant from his staff present in the grand jury room. The fact that she remained seated silently behind the complainant during the complainant's testimony indicates that the victim-witness assistant did not engage in conduct which "invade[d] the province of the grand jury." *Commonwealth* v. *Favulli, supra* at 106. Compare *Commonwealth* v. *Harris, supra* at 470. Indeed, the judge ruling on the motion to dismiss found, after conducting a hearing, that the presence of the victim-witness assistant "did not jeopardize the truth-seeking function [of the grand jury] nor did it intimidate the witness." We conclude that the victim-witness assistant properly could be present in the grand jury room in accordance with the standard set forth in Mass. R. Crim. P. 5 (c), and that her presence and behavior did not affect any of the in-

terests which our decisions have stated are protected by art. 12.

3. *The defendant's right of self-representation.* Subsequent to arraignment, counsel was appointed to represent the defendant. However, on February 17, 1989, four months prior to trial, the defendant informed a judge in a motion session that he wanted to represent himself. The request was apparently referred to the trial judge. The defendant raised the matter again with the judge who was to preside at his trial on June 7, 1989, nine days prior to the commencement of the trial. The defendant stated again that he intended to exercise his right to represent himself at the trial, and he indicated that he wanted his attorney of record to withdraw from the case. The prosecutor had no specific objection to the defendant's representing himself, but objected to the defendant's cross-examining the complainant. The prosecutor requested that standby counsel be appointed for the "limited purpose" of cross-examining the complainant under the "direction" of the defendant. The defendant objected to having anyone else handling this particular cross-examination. After making the comments noted in the margin,[3] the judge ruled that the defendant could represent himself, but that he would not be permitted to cross-examine the complainant. The judge appointed the defendant's attorney as standby counsel, and instructed the defendant to write out any questions he wanted to ask the complainant in cross-examination and to present them through standby counsel.

The issue of the scope of the defendant's self-representation arose again prior to jury empanelment when the prosecutor urged the trial judge to advise the defendant of the pitfalls of proceeding pro se. The judge cautioned the defendant that he would be held to the same rules that would bind an attorney, that certain skills were involved in trying a case which would not necessarily be within the province of the av-

---

[3]The judge stated that he had "been around a few years both as an attorney and as a judge, and [had] spent and paid [his] dues in the child abuse cases of the District Court; and [he was] well aware of what goes on, and . . . of where you find the chinks in various people's armor . . . ."

erage person, and that he should weigh carefully his rejection of his attorney. The judge concluded that he knew of no reason why the defendant, whom the judge described as "a person of intelligence and familiarity with the goings on in the courtroom," should not represent himself. However, the judge restated his ruling that the defendant would be prohibited from cross-examining the complainant. The defendant objected again to this limitation and repeated his view that the restriction placed on cross-examination of the complainant violated his rights. At this hearing, the defendant's standby counsel also emphasized the defendant's desire to "fully represent himself and cross-examine all the witnesses including the daughter." Counsel noted the defendant's objection to "questioning [by counsel] on his behalf o[f] that witness or any witness." Counsel also pointed out to the judge that art. 12 includes a person's right "to be fully heard either by himself or by his counsel and [to] meet face to face with the witnesses." The judge renewed his ruling, as set forth in the margin,[4] and noted the defendant's objection for the record.

The defendant represented himself throughout the trial. After direct examination of the complainant was completed, standby counsel again pressed the defendant's insistence on the right to cross-examine her personally. The judge once

---

[4]The judge advised counsel and the defendant of the following:

"Well, I'm affording him the opportunity in regard to the principal complainant here, the daughter — I'm affording him the opportunity through you as standby counsel to put any questions to her in cross-examination that he wishes.

"It is my opinion that his cross-examination as the Defendant of the witness who is the complainant has the possibility of producing intimidation in that part, untruthful answers, fear, and further trauma from the whole court experience.

"Just being in court has a certain trauma to it. Being cross-examined by the alleged perpetrator of the acts, I believe, of a child of her young years would be traumatic to her and not necessarily productive of truthful responses. So, therefore, I have exercised my discretion in saying he may not directly cross-examine."

more denied the request and gave the jury the instruction set forth in the margin.[5]

Cross-examination of the complainant proceeded in the form directed by the judge, with the defendant writing out questions and giving them to standby counsel to ask of the complainant. During the course of the questioning, however, standby counsel protested to the judge that he felt awkward with this method of examination, and that he could not adjust his questions quickly enough to respond to the complainant's answers without constantly conferring with the defendant. The defendant made an offer of proof, stating that if he were allowed to question the complainant directly, he would attempt to show that her accusation of assault was the product of coercion by government officials and others. The judge stood by his previous rulings, and the cross-examination by standby counsel was then terminated.

Based on these events, the defendant argues that the restriction placed by the judge on his ability to cross-examine his accuser violated his constitutional right to represent himself. We agree with this contention, and conclude that the error requires a new trial.

The right to conduct one's own defense in a criminal case is guaranteed by both the Massachusetts Constitution,[6] see *Commonwealth* v. *Mott*, 2 Mass. App. Ct. 47 (1974), and the United States Constitution,[7] see *Faretta* v. *California*,

---

[5]The judge instructed the jury as follows:

"I have ruled that [the defendant] has the right to represent himself, and he has the right to examine witnesses, making openings, make closing arguments to you. We all have that right.

"I decline to allow him to cross-examine his own daughter, and I directed that . . . standby counsel could put any question that [the defendant] wanted put to her, but that [counsel] would ask the questions.

"I exercised my discretion in doing that. So, that's why [standby counsel] may have some questions for this witness and why [the defendant] does not ask them himself. I have made that ruling."

[6]Article 12 of the Declaration of Rights of the Massachusetts Constitution provides that "every subject shall have a right . . . to be fully heard in his defence by himself, or his counsel, at his election."

[7]The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be in-

422 U.S. 806 (1975). Consistent with this constitutional enti-
tlement, a defendant can represent himself if the election to
proceed without counsel is unequivocal, see *Commonwealth
v. Tuitt*, 393 Mass. 801, 807 (1985); *Commonwealth v.
Chapman*, 8 Mass. App. Ct. 260, 265 (1979); *Common-
wealth v. Miller*, 6 Mass. App. Ct. 959, 960 (1978); volunta-
rily and knowingly made, see *Faretta v. California, supra* at
835; *Commonwealth v. Lee*, 394 Mass. 209, 216 (1985);
*Commonwealth v. Appleby*, 389 Mass. 359, 366, cert. de-
nied, 464 U.S. 941 (1983); *Commonwealth v. Jackson*, 376
Mass. 790, 795 (1978); asserted in a timely manner, see
*Commonwealth v. Miller, supra* at 960, and not sought for
an improper purpose, *United States v. Dougherty*, 473 F.2d
1113, 1124 (D.C. Cir. 1972); see *Faretta v. California,
supra* at 834-835 n.46; *Commonwealth v. Jackson, supra* at
796; *Chapman v. United States*, 553 F.2d 886, 895 (5th Cir.
1977).

We are satisfied that the defendant's exercise of his right
to represent himself was unequivocal[8] and made in a timely
way, knowingly and voluntarily.

---

formed of the nature and cause of the accusation; to be confronted with
the witnesses against him; to have compulsory process for obtaining wit-
nesses in his favor, and to have the assistance of counsel for his defence."
The right to represent oneself has been held to exist under this provision,
and the right is made applicable to the States through the Fourteenth
Amendment to the United States Constitution. *Faretta v. California,
supra* at 818.

[8]The Commonwealth argues that the defendant did not consistently rep-
resent himself throughout the trial, but allowed his standby counsel to con-
duct the defense as his de facto attorney. This, the Commonwealth asserts,
establishes that the defendant did not unequivocally elect to proceed pro
se.

The record does not support the Commonwealth's claim. The defendant
did, in fact, except where restricted by the judge, represent himself in his
defense at trial. The defendant made opening and closing arguments, ex-
amined, or cross-examined, all witnesses except for the complainant, par-
ticipated in sidebar conferences with the judge, and made several objec-
tions. It is also evident that the defendant, with the advice of standby
counsel, made the major strategy decisions during the course of the trial.
Aside from cross-examining the complainant, as required by the judge,
standby counsel merely assisted the defendant in the technical aspects of

The judge appears to have concluded, based on his own experience and feelings as to this trial, see notes 3 and 4, *supra*, that trauma and intimidation of the complainant, and possibly untruthful answers, would be the inevitable result of the defendant cross-examining the complainant. In attempting to justify the limitation, the Commonwealth now argues (although it did not argue the point below) that the defendant sought to cross-examine the complainant solely to intimidate her.

The record contains nothing to show that the defendant intended to exploit or manipulate the right of self-representation for ulterior purposes. There is also no indication that the defendant's questioning of the complainant would harm her, that it would violate the rules of evidence and protocol which normally apply in this sort of trial, or that the complainant would not respond truthfully to his questions. The judge's determination, that the defendant had made a valid constitutional choice to represent himself, necessarily assumed that the defendant would cooperate in good faith with rulings and directions of the judge throughout the trial, and that he would engage in a properly conducted examination of all witnesses. "The possibility that reasonable cooperation may be withheld, and the right later waived, is not a reason for denying the right of self representation at the start." *United States* v. *Dougherty, supra* at 1126.

There also can be no question that cross-examination of witnesses, in particular the principal accuser of the defendant, is a fundamental component of the right of self-representation. In *McKaskle* v. *Wiggins*, 465 U.S. 168, 178 (1984), the United States Supreme Court spoke broadly about the scope of the right of self-representation as follows:

---

trial practice with which a lay person would not ordinarily be familiar. This was standby counsel's proper function. See *McKaskle* v. *Wiggins*, 465 · U.S. 168, 183-185 (1984); *Faretta* v. *California, supra* at 834-835 n.46; *United States* v. *Dougherty, supra* at 1124-1126; *Commonwealth* v. *Stovall*, 22 Mass. App. Ct. 737, 738-739 (1986). The defendant had stated unequivocally on several occasions that he wished to represent himself, and that determination was made manifest throughout the trial.

"[T]he *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance, the *Faretta* right is eroded" (emphasis in original).

This language clearly imports constitutional protection for the right of cross-examination asserted by the defendant.

The *mere belief* held by the judge that the complainant could be intimidated or harmed beyond the normal limits associated with a trial involving a young complainant, or that she might respond untruthfully if she was questioned by the defendant, is not sufficient to justify the restriction placed on cross-examination. If it had been formally established during a voir dire, or in the course of the cross-examination itself, that the defendant would or could not conduct a proper examination without interfering with the rights of the complainant or distorting the truth-seeking function of the trial, the judge might have been correct in limiting the form of the defendant's cross-examination. However, as has been previously stated, there was nothing to indicate that either of these eventualities would occur if the defendant was permitted full exercise of his right of self-representation.

We conclude that the restriction denied the defendant a fair chance to present his case his own way because it literally required standby counsel to speak in his place, thereby hindering the defendant's ability to conduct an effective cross-examination of a witness on whose credibility the Commonwealth's case depended. As a result, the defendant's constitutional right of self-representation has been violated and a new trial is necessary.[9] Cf. *McKaskle* v. *Wiggins, supra* at

---

[9]The defendant also claims that the judge's ruling, and the instruction given to the jury regarding the procedure imposed by the judge, see note 5 *supra,* may have created an impression in the jurors' minds that the judge

176-177; *United States* v. *Campbell,* 874 F.2d 838, 847-848 (1st Cir. 1989); *United States* v. *Torres,* 793 F.2d 436, 441-442 (1st Cir.), cert. denied, 479 U.S. 889 (1986).

4. *Retrial.* At the trial, the judge allowed the prosecutor to seat the complainant so that she was facing away from the defendant at a forty-five degree angle during her testimony. Under this arrangement, the defendant could see a profile of the complainant's face, and he could see her lips move. The complainant, however, was not required to face the defendant, and was permitted to avoid eye contact. We recently discussed in *Commonwealth* v. *Kater,* 409 Mass. 433, 445-447 (1991), what is sufficient to satisfy constitutional requirements of confrontation with respect to witnesses who do not look directly at a defendant during their testimony. The principles set forth in the *Kater* decision are sufficient to guide the judge at the retrial of this case should the issue of the complainant's seating arise again. We add only that if a special seating arrangement is allowed, the judge should take care to ensure that the jury does not draw an inference of guilt from the arrangement. See *Coy* v. *Iowa,* 487 U.S. 1012, 1034-1035 (1988) (Blackmun, J., dissenting).

The judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*So ordered.*

---

believed the defendant was guilty, thus depriving him of a fair trial. Because we hold that the violation of his right to pro se representation, by itself, justifies a new trial, we need not address this claim.