COMMONWEALTH *vs.* JAMES E. JOHNSON.

Plymouth. November 4, 1993. - April 12, 1994.

Present: LIACOS, C.J , NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Confrontation of witnesses. *Rape. Witness*, Child.
*Practice, Criminal*, Fair trial, Examination of jurors, Challenge to ju-
rors. *Jury and Jurors. Evidence*, Fresh complaint, Admissions and con-
fessions. *Words*, "Face to face."

This court held that art. 12 of the Declaration of Rights of the Massachu-
setts Constitution which provides, in part, that "every subject shall have
a right . . . to meet the witnesses against him face to face" requires that
a criminal defendant be given the opportunity to observe the faces of all
witnesses testifying against the defendant at trial. [499-505]

A new trial was required in a criminal case involving sexual offenses where
the judge allowed the Commonwealth's motion for a special courtroom
seating arrangement during the testimony of two minor witnesses that
resulted in the defendant being unable to see the faces of those wit-
nesses while they testified, in violation of the defendant's right to con-
front witnesses against him face to face guaranteed by art. 12 of the
Declaration of Rights of the Massachusetts Constitution. [505]

Superior Court Rule 6 governing peremptory challenges of jurors does not
require the use of the method of jury challenges described in *Common-
wealth v. Walker*, 379 Mass. 297, 299 n.1 (1979). [505-508]

At the retrial of a criminal case, fresh complaint evidence should be lim-
ited as discussed in *Commonwealth* v. *Flebotte, ante* 348, 351 (1994),
and *Commonwealth v. Scanlon*, 412 Mass. 664, 669-671 (1992) [508];
and the scope of a certain witness's testimony should be limited to only
those facts of which the witness has first-hand knowledge. [509]

INDICTMENTS found and returned in the Superior Court
Department on June 13, 1989, and June 26, 1989, re-
spectively.

The cases were tried before *Charles J. Hely*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Frank M. Gaziano,* Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant was convicted after a trial in the Superior Court of two indictments charging him with rape by force of a child under the age of sixteen years, in violation of G. L. c. 265, § 22A (1992 ed.). On appeal, the defendant asserts several grounds of error. We conclude that the defendant's right, guaranteed by art. 12 of the Declaration of Rights of the Massachusetts Constitution, to confront the witnesses appearing against him at trial, was violated. We reverse on that ground, and we discuss only that claim in detail. We also comment briefly on three other issues raised by the defendant that may arise on retrial.

A Plymouth County grand jury returned two indictments charging the defendant with rape by force of his girl friend's two minor daughters.[1] Immediately prior to trial, the trial judge heard arguments on the Commonwealth's motion for a special courtroom seating arrangement. The judge allowed the Commonwealth's motion. The empanelment of the jury occurred next and spanned the course of two days. The judge conducted an individual voir dire of each potential juror, questioning over one hundred members of the jury pool. After trial, the jury returned guilty verdicts on both indictments. The defendant was sentenced to from nine to ten years on each indictment, the sentences to be served concurrently. The defendant appealed, and we transferred the case here on our own motion.

The defendant contends that he was denied his right to confront the witnesses against him at trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and art. 12. Article 12 provides, in part, that, "every subject shall have a right . . . to meet the witnesses

---

[1]The girl friend, Barbara Jean Smith-Coderre, was indicted for being an accessory after the fact to the rape of her two daughters. Her trial was consolidated with that of the defendant and she was convicted on both indictments. She is not a party to this appeal.

against him face to face." We conclude that the words "face
to face" as used in art. 12 mean, literally, "face to face." We
also conclude that the defendant's art. 12 rights were vio-
lated. Hence, we do not address the defendant's Federal con-
stitutional claim.

Prior to trial, the Commonwealth moved for a special
courtroom seating arrangement to be used during the testi-
mony of the two child complainants, who were then eight
and ten years old. The trial judge allowed the motion for spe-
cial seating arrangement without hearing any evidence on
the necessity of such arrangement and without making any
specific findings regarding the needs of these particular child
witnesses.[2] Although there is some dispute between the Com-
monwealth and the defendant regarding the actual seating
arrangement that was used, it appears from the record that
the children did not sit in the witness box. Instead, the chil-
dren testified in turn while sitting near the court reporter's
table, facing toward the jury box. The questioning attorney
sat between the child witness and the jury so that the witness
and the attorney were facing each other. As a result of the
special seating arrangement, the defendant was unable to see
the faces of the child complainants while they testified.[3] De-

___

[2] The judge commented that he was going to modify the courtroom seat-
ing arrangement "because of the ages of the child witnesses." Besides their
ages, the only other information before the judge regarding the necessity
of a special seating arrangement was a statement in the Commonwealth's
written motion for special courtroom setup that "the two young witnesses
have specifically expressed severe concern for their safety and the fact that
the perpetrators will be in the room with [them]. The youngest victim . . .
has only recently indicated that she felt strong enough to go into the court-
room. She had previously expressed great reluctance about testifying and
in fact did not testify at the prior hearings relative to this matter."

[3] The defendant moved to expand the record on appeal to include several
affidavits and a diagram and notes prepared by the court reporter which
purport to represent the seating arrangement during the complainants' tes-
timony. The Commonwealth opposed this motion, and also argued at oral
argument that it was not so clear that the complainants had their backs to
the defendant while testifying. As discussed in the following paragraph,
the trial transcript alone leads us to conclude that at least the first com-
plainant testified in such a way that the defendant was unable to see her
face, and the record does not reveal that this arrangement was modified to

fense counsel objected repeatedly to this arrangement as a violation of the right to confront witnesses.

We previously have noted that the framers of the Massachusetts Constitution, in choosing the words of art. 12 requiring that "every subject shall have a right . . . to meet the witnesses against him *face to face*," had the benefit of the constitutional experiences of several other jurisdictions when they enacted the Massachusetts Constitution. *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 541 n.9 (1988). Some of those jurisdictions provided the confrontation right without the express "face to face" language of art. 12. *Id.* In *Bergstrom*, we presumed that the Massachusetts framers "were aware of the other States' provisions and chose more explicit language to convey unequivocally their meaning." *Id.* In that case, we recited the familiar rules of constitutional construction that the words of a Constitution "should be interpreted in the sense most obvious to the common intelligence." *Bergstrom*, *supra* at 541, quoting *Opinion of the Justices*, 365 Mass. 655, 657 (1974), and that "[w]ords of the Constitution cannot be ignored as meaningless" since "[a]ll [the] words [of the Constitution] must be presumed to have been chosen advisedly." *Bergstrom*, *supra* at 541, quot-

---

cure the problem. Accordingly, since we arrive at this conclusion based on the transcript alone, the defendant's motion adds nothing and is denied.

At the pretrial hearing on the Commonwealth's motion for a special seating arrangement, the codefendant's attorney pointed out that the children would have their backs to the defendants while testifying. Later, the defendant's attorney remarked to the judge that, "you're then saying that the witnesses will not be required to face in the direction of the —." We assume from the judge's response that the attorney's statement would have concluded with "defendant," because the judge responded, "No, I'm not requiring that. . . . I'm not specifically requiring the witness to look in the direction of the defendants." The defendant's attorney responded by asserting the defendant's "right to face [his] accuser." At the conclusion of the direct examination of the first child witness, the defendant's attorney complained to the judge that "[w]e can't see her demeanor," and the codefendant's attorney again pointed out that his client was being "denied her right to face her accuser." At no time did the prosecutor attempt to contradict the defendant's or codefendant's assertions that they could not observe the face of the child witnesses.

Commonwealth *v.* Johnson.

ing *Opinion of the Justices*, 332 Mass. 769, 777 (1955), and *Mount Washington* v. *Cook*, 288 Mass. 67, 70 (1934).

The "most obvious" and plain interpretation of "to meet the witnesses against him face to face," a phrase explicitly included in our Constitution but not included in other then-existing Constitutions, is that a defendant must be given an opportunity to observe the faces of all witnesses who testify against him at trial. See *Coy* v. *Iowa*, 487 U.S. 1012, 1020, 1022 (1988) (screen placed between child witness and defendant which prevented defendant and witness from seeing each other violated Sixth Amendment confrontation right).[4]

In *Bergstrom*, where we passed on the constitutionality of allowing child witnesses to testify outside the physical presence of the defendant even though the defendant could view the witness on closed-circuit television, we said that "[t]o interpret the words of [art. 12] as requiring only that the defendant be able to see and hear the witness renders superfluous the words 'to meet' and 'face to face.'" *Bergstrom*, *supra* at 542. To interpret art. 12 as requiring only that the witnesses be in the physical presence of the defendant, without the defendant's being able to observe the face of the witness, likewise would render those words superfluous.

To be sure, a witness cannot be compelled to focus his gaze on the defendant or to maintain eye contact while testifying. *Commonwealth* v. *Kater*, 409 Mass. 433, 446 (1991). See *Commonwealth* v. *Conefrey*, 410 Mass. 1, 14 (1991). Ordering a witness to make eye contact with a defendant is quite different, however, from permitting a witness to sit so that no eye contact or observation of the witness's face by the defendant is possible. In the former case, the confrontation is "face to face," even though it is not "eyeball to eyeball," and thus satisfies art. 12. *Kater, supra.* See *Commonwealth* v. *Tufts*, 405 Mass. 610, 615-616 (1989) (where defendant could have seen child witness by bending slightly, there was no violation of confrontation rights).

---

[4]Our decision on this issue rests solely on adequate and independent State grounds; we cite Federal case law only for its persuasive effect.

One of the several reasons our Constitution requires face-to-face confrontation is that it allows the jury to observe the demeanor of the witness in order to assess credibility. *Kater, supra.* For the defendant to be able to argue the witness's demeanor to the jury to the extent that it sheds light on credibility, the defendant must be able to observe the demeanor. Another reason face-to-face confrontation is required is the widely-held belief that recollection, veracity, and communication are influenced by face-to-face challenge. *Bergstrom, supra* at 542. See *Coy, supra* at 1017-1020. If a witness is sitting face to face with a defendant but refuses to make eye contact, jurors observing this likely will take it into consideration when assessing credibility. See *Coy, supra* at 1019; *Bergstrom, supra* at 548, 550. On the other hand, when the witness is permitted to testify with his back to the defendant, the jury are unable to observe the effect of face-to-face confrontation on the witness. Furthermore, jurors who are not instructed to draw no adverse inferences from the seating arrangement may do just that. See *Commonwealth v. Conefrey, supra,* citing *Coy v. Iowa,* 487 U.S. 1012, 1034-1035 (1988) (Blackmun, J., dissenting).

We recognize that the right to confrontation under art. 12, like its counterpart under the Sixth Amendment,[5] may yield in appropriate, although limited, circumstances. See *Bergstrom, supra* at 545-546, and cased cited. See also *State v. Peters,* 133 N.H. 791, 794 (1991) (New Hampshire "face-to-face" confrontation right occasionally must yield to considerations of public policy and necessities of the case). Unlike the Sixth Amendment, however, art. 12 contains an indispensable element of face-to-face confrontation of witnesses appearing at trial. Compare *Maryland v. Craig,* 497 U.S. 836, 849-850 (1990) (face-to-face confrontation of witnesses appearing at trial is not indispensable part of Sixth Amendment right) with *Bergstrom, supra* at 544-545 (art. 12 has never been interpreted to allow introduction of an available witness's testimony outside presence of defendant). The right

---

[5]See, e.g., *Maryland* v. *Craig,* 497 U.S. 836, 844 (1990).

to cross-examine witnesses under oath and the ability of the jury to observe the witness's demeanor are incidental to the indispensable right under art. 12 to confront the witnesses face to face. See *Kater, supra* at 446. These two incidental features help to ensure the reliability of evidence, but the indispensable right to confront witnesses at trial face to face cannot be eliminated even if these incidental features are present in a particular case. See *Maryland* v. *Craig, supra* at 862 (Scalia, J., dissenting).

We reiterate this court's awareness of and concern for the acute problem of child abuse, including sexual abuse, that plagues society. At the same time, we hold firm to our belief that the "right of the accused to be tried in the manner which our Constitution guarantees cannot dissolve under the pressures of changing social circumstance or societal focus." *Bergstrom, supra* at 553. Thus, although a trial judge may not permit a child witness to testify with his back to the defendant, the judge may implement other measures which are consistent with the constitutional rights of the accused and also decrease the stress and trauma that a child witness may suffer. See *Bergstrom, supra* at 553-554 (environment where testimony given can be made less formal and intimidating; counselling before and after testifying; electronically preserved testimony allowable if defendant was present during testimony); *Commonwealth* v. *Conefrey, supra* at 14 (permissible for witness to sit at forty-five degree angle from defendant where defendant could see witness's profile and lips); *Commonwealth* v. *Tufts*, 405 Mass. 610, 614-615 (1989) (videotaped testimony where all parties including defendant and witnesses were seated around conference table was permissible where defendant could see witnesses by bending slightly).

We add that certain procedures may be used only on a showing by the Commonwealth, by more than a preponderance of the evidence, of a compelling need for the use of such procedure. *Commonwealth* v. *Dockham*, 405 Mass. 618, 623-624 (1989) (trial judge found beyond reasonable doubt that videotaping outside courtroom was necessary to avoid severe

trauma to child witness). The procedure employed by the judge in this case includes no finding of a compelling need for the protection of either complainant before it was used. Indeed, the judge stated that he would employ the alternate seating arrangement merely because of the ages of the witnesses. Age alone is insufficient to establish a compelling need for the use of an alternative procedure. Cf. *Bergstrom, supra* at 546-547. See also *Peters, supra* at 794.

The defendant's right under art. 12 to confront the witnesses against him face to face was violated in this case. Accordingly, his convictions must be reversed,[6] and he must have a new trial.

At retrial, the issue may arise again whether the defendant has a right to use the method of peremptory challenges described in *Commonwealth* v. *Walker*, 379 Mass. 297, 299 n.1 (1979) (*Walker* method).[7] The defendant raised timely ob-

---

[6]A violation of the art. 12 right to confront witnesses face to face may be subject to harmless error analysis. On appeal, the Commonwealth did not argue that any violation of the confrontation right was harmless. We therefore consider that argument waived in this case and need not address it. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975); Mass. R. A. P. 16 (b), as appearing in 411 Mass. 1602 (1992). Nevertheless, we could not say beyond a reasonable doubt that the violation of the defendant's confrontation right did not contribute to the verdicts obtained. See *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 (1987).

[7]The defendant labels the method of peremptory challenges described in *Commonwealth* v. *Walker*, 379 Mass. 297, 299 n.1 (1979), as the "struck method," just as we did in that case. *Id.* It appears that the description of the struck method we gave in *Walker* may not be an accurate description of what the struck method actually is. The struck method is not a system for exercising peremptory challenges, but, rather, is an alternative method for selecting a jury which "has its roots in ancient common-law heritage." *Swain* v. *Alabama*, 380 U.S. 202, 217 (1965). The struck method described in *Swain* requires that, initially, a venire pool of about one hundred members be drawn. *Id.* at 210. After venire persons from the pool are excused for cause or hardship, the jury are "struck": the defendant strikes two members of the remaining venire, and then the prosecutor strikes one member. *Id.* This process is repeated until twelve jurors remain, who then serve as jurors for the trial. *Id.* Thus, the method described in *Walker* is not the struck method. Accordingly, we shall refer to the method described in *Walker* as the "*Walker* method."

Rule 6 of the Rules of the Superior Court (1993) is the method of jury selection to be used by trial courts in the Commonwealth. See *Common-*

jections to the trial judge's refusal to allow the use of the *Walker* method at his trial. He has argued the issue on appeal, thus we comment briefly on this issue.[8]

Under the *Walker* method of peremptory challenges, the parties do not begin to exercise their peremptory challenges until the number of venire persons found indifferent equals the total number of all peremptory challenges that may be exercised in the case plus the number of indifferent jurors needed to serve on the jury. See *Commonwealth* v. *Walker*, *supra*. In this case, the two defendants together had eighteen peremptory challenges,[9] the prosecutor had eighteen, and the jury were to consist of fourteen members, including two al-

---

*wealth* v. *Brown*, 395 Mass. 604, 606 (1985). The method set forth in rule 6 is not a "struck method" and should not be referred to as a "struck method," because the struck method (as described in *Swain*) and the rule 6 method are two different methods. Compare rule 6 with *Swain*, *supra* at 217-218.

Notwithstanding his inappropriate use of the term "struck method," the defendant does not argue that he is entitled to use the *Swain* struck method. Rather, he argues that we should interpret the language of rule 6, that "[t]he jurors shall first be called until the full number is obtained," as requiring the *Walker* method. We discuss that argument in the body of this opinion.

[8]On the first day of jury selection, the judge individually questioned fifty-six members of the jury pool. Twenty-six of those were found indifferent, and the rest were excused because they would not be impartial jurors or because of some personal hardship. It appears that the jury pool in the courthouse was exhausted at that point. Of the twenty-six impartial venire persons, fourteen were seated in the jury box. The Commonwealth began to exercise its peremptory challenges, and the judge then required both defense attorneys, over objection, to begin exercising theirs. As jurors were excused, they were replaced with remaining members of the venire. When there were no venire persons left to replace those excused by peremptory challenges, the judge recessed for the day.

The next day, the judge again individually questioned a large number of the members of the jury pool. Twenty-seven of those were found to be indifferent. Peremptory challenging resumed, during which the judge gave each defendant an additional peremptory challenge. A jury of fourteen, including two alternates, finally were sworn.

In total, the venire of indifferent potential jurors consisted of fifty-three members.

[9]The defendant had fourteen challenges and his codefendant had four. See Mass. R. Crim. P. 20 (c) (1), 378 Mass. 890 (1979).

ternates. Thus, under the *Walker* method, fifty indifferent venire persons would have been needed.

The defendant contends that he has a right to use the *Walker* method of challenges because rule 6 of the Rules of the Superior Court (1993) provides that peremptory challenging shall begin after "the full number [of jurors] is obtained." This is so, the defendant argues, because " 'Rule 6 is designed to protect the parties' right to *full comparative choice* in the selection of a jury by allowing them to exercise their peremptory challenges against the *prospective jury viewed and evaluated as a whole.*' [*Commonwealth* v. *Ptomey*, 26 Mass. App. Ct. 491, 494 (1988)]" (emphasis in original).

While the *Walker* method of jury challenging may be a desirable strategic tool for the parties in a trial, it is not required by the language of rule 6 quoted above. "The full number" refers to the number of jurors, including alternates, who will sit on the case. If the rule had been intended to require the *Walker* method, the language chosen by its drafters would have been more explicit.

In the *Ptomey* case, the Appeals Court passed on whether the judge's requiring the parties to exercise peremptory challenges after the judge conducted an individual voir dire of each juror violated rule 6. *Ptomey, supra* at 491-492. The court concluded that the judge's method was improper, and used the language quoted by the defendant in arriving at that conclusion. *Id.* at 494-495. Thus, the "full comparative choice" referred to by the Appeals Court contemplated comparative choice among those jurors initially seated in the jury box in order to get the number of jurors needed for the case. We decline to stretch "full comparative choice" so that it requires the use of the *Walker* method.

Finally, we note that requiring the use of the *Walker* method may be unrealistic in light of the fact that jury pools often will be inadequate to satisfy the need for such large numbers of jurors, especially when several trials are scheduled to begin on the same day in the same courthouse. This case is illustrative of the potential problem. The judge inter-

viewed over one hundred members of the jury pool, over fifty on the first day. On the first day, the jury pool in the court-house was exhausted, but only twenty-six persons stood indifferent. ·There would have been an unnecessary delay if the judge had waited until the next day to find more indifferent venire persons and then proceed with peremptory challenging. In addition, those jurors whom the attorneys knew they would challenge would have to return the next day, only to be challenged and sent home again. The *Walker* method would make a troubled system even more inefficient.

Furthermore, it is not so clear that the *Walker* method would be successful in giving the defendant the opportunity to choose among all potential jurors. In this case, a total of fifty-three indifferent jurors were passed over to seat fourteen jurors.[10] Under the *Walker* method of calculation, however, initially only fifty jurors should have been necessary. Obviously, the *Walker* method leaves no room for unexpected situations which commonly arise during jury selection, such as where a juror, originally found to be indifferent, later reveals to the judge some prejudice or hardship and is excused.

Thus, the *Walker* method may be a desirable strategic tool, but in cases such as this where the total number of peremptory challenges is great, the *Walker* method is likely to be inefficient and unworkable. In any case, use of the *Walker* method is not mandated by rule 6.[11]

The defendant argues that the judge improperly admitted fresh complaint evidence which exceeded the scope of one of the child complainant's testimony. While we do not decide whether there was error, we note that fresh complaint evidence should be limited as discussed in *Commonwealth* v. *Flebotte, ante* 348, 351 (1994), and *Commonwealth* v. *Scanlon*, 412 Mass. 664, 669-671 (1992).

---

[10]The judge gave each defendant an additional challenge, making the *Walker* method number fifty-two.

[11]Because we conclude that rule 6 does not require the use of the *Walker* method, we do not address defendant's argument that the "full number is obtained" language of rule 6 is applicable in cases where the judge conducts individual voir dire of potential jurors.

The defendant contends that there was error in the judge's ruling on the admissibility of certain testimony by a police officer relating to the defendant's presence in and return from Arizona. Initially, the judge allowed the admission of this evidence, but on reconsideration, he decided that part of the testimony contained hearsay evidence and should be struck. He gave the defendant the option of leaving the record intact, or striking the officer's testimony and allowing the prosecutor to question the officer regarding the events surrounding the defendant's return from Arizona, of which the officer had first-hand knowledge. The defendant chose to leave the record intact.

It appears that the judge, on reconsideration, was aware of the proper scope of the officer's testimony in this area. On remand, the officer's testimony regarding the defendant's presence in Arizona should be limited to only those facts of which the officer has first-hand knowledge.

The judgments are reversed, the verdicts are set aside, and the case is remanded for a new trial.

*So ordered.*